# FARMERS AND MECHANICS SAVINGS BANK OF MINNEAPOLIS *v.* STATE OF MINNESOTA.

## ERROR TO THE SUPREME COURT OF THE STATE OF MINNESOTA.

No. 39. Argued May 8, 1913.—Decided February 24, 1914.

A question though novel itself may be solved by the application of principles long established.

The entire independence of the General Government from any control by the respective States is fundamental; and States may not tax agencies of the Federal Government. *M'Culloch* v. *Maryland*, 4 Wheat. 316.

Territories are instrumentalities established by Congress for the gov-

ernment of the people within their respective borders, with authority
to subdelegate the governmental power to the municipal corporations
therein, and the latter are therefore instrumentalities of the Federal
Government.

A tax upon the exercise of the function of issuing bonds is a tax upon
the operations of the municipal government; and to tax the bonds as
property in the hands of the holder is in effect a tax upon the right
of the municipality to issue them.

A tax to any extent on bonds issued by a government or subdivision
thereof, however inconsiderable, is a burden on the operation of that
government. If allowed at all it may be carried to an extent which
shall entirely arrest such operations. *M'Culloch* v. *Maryland*, 4
Wheat. 316.

A State may not tax bonds issued by a municipality of a Territory of
the United States. And so *held* as to an attempt by the State of
Minnesota to tax bonds issued by municipalities of the Indian Ter-
ritory and the Territory of Oklahoma held by corporations in Minne-
sota.

There is no provision of law that makes obligations of municipalities
within the Indian Territory or the Territory of Oklahoma obligations
of the Territory, nor were such obligations assumed by the State of
Oklahoma on admission to Statehood.

Exemption from taxation is a material element in the obligation of a
bond issued by a municipality, and it will not be presumed that Con-
gress would enact legislation that would impair that obligation by
eliminating the exemption without the clearest legislative language
expressing it.

Where bonds are exempted from state taxation under the Federal
Constitution they cannot be included as assets in ascertaining the
surplus of the corporation owning them for the purpose of imposing
a state property tax thereon.

When a state statute is attacked as denying equal protection of the
law by one class of those excepted from its benefits, the question of
constitutionality can be confined to the particular class attacking it,
and if there is reasonable ground for the classification as to that
class, it will be upheld to that extent without inquiring whether it is
constitutional as to the other classes affected by it.

A provision in a state tax statute excepting from an exemption banks,
savings banks and trust companies, is not unconstitutional under
the Fourteenth Amendment as discriminating against savings banks
as a class and denying them the equal protection of the law. The
state court having held that there were reasonable grounds for the

classification, this court so holds in regard to the statute of Minnesota involved in this action.

*114 Minnesota, 95, reversed in part.*

THE facts, which involve the constitutionality of certain tax statutes of Minnesota as applied to bonds issued by municipalities in Indian Territory and the Territory of Oklahoma, are stated in the opinion.

*Mr. William A. Lancaster,* with whom *Mr. C. B. Leonard* and *Mr. Milton D. Purdy* were on the brief, for plaintiff in error:

The tax in question is a property tax. The general opinion of the profession has been in favor of non-taxability of bonds of territorial municipalities. Federal agencies and instrumentalities are non-taxable by the States. The Federal Government cannot tax the bonds of the municipalities of a State. That part of § 3, of c. 328, Laws of 1907, permitting taxation on bonds of territorial municipalities is unconstitutional.

In support of these contentions, see *A., T. & S. Fe Ry.* v. *Sowers,* 213 U. S. 55; *Bank of Commerce* v. *New York,* 2 Black, 620; *Banks* v. *Supervisors,* 7 Wall. 26; *Binns* v. *United States,* 194 U. S. 486; *Bonaparte* v. *Tax Court,* 104 U. S. 592; *Faribault* v. *Missner,* 20 Minnesota, 396; *Grether* v. *Wright,* 75 Fed. Rep. 742; *Hibernia Savings Society* v. *San Francisco,* 200 U. S. 310; *Home Savings Bank* v. *Des Moines,* 205 U. S. 503; *McCulloch* v. *Maryland,* 4 Wheat. 316; *Mercantile Bank* v. *New York,* 121 U. S. 138; *Mormon Church* v. *United States,* 136 U. S. 1; *Murphy* v. *Ramsey,* 114 U. S. 15; *National Bank* v. *Yankton,* 101 U. S. 129; *Noonan* v. *Stillwater,* 33 Minnesota, 198; *Plummer* v. *Coler,* 178 U. S. 115; *Pollock* v. *Farmers' L. & T. Co.,* 157 U. S. 429; *Snow* v. *United States,* 18 Wall. 317; *Society for Savings* v. *Coite,* 6 Wall. 594; *State* v. *Canda C. C. Co.,* 85 Minnesota, 457; *State* v. *Duluth Gas*

*Co.,* 76 Minnesota, 96; *State* v. *Pioneer Savings Co.,* 63
Minnesota, 80; *State* v. *Weyerhauser,* 68 Minnesota, 353;
*The Banks* v. *The Mayor,* 7 Wall. 16; *United States* v.
*Railroad Company,* 17 Wall. 322; *Weston* v. *Charleston,*
2 Pet. 449, 468.

*Mr. James Robertson* and *Mr. Lyndon A. Smith,* Attor-
ney General of the State of Minnesota, for defendant in
error:

The bonds in question were not bonds of a territorial
municipality on May 1, 1908. A territorial government
is not responsible for the bonds issued by a municipal
corporation thereof. The United States Government is
not responsible for the liabilities incurred by a territorial
government. A municipal corporation of a Territory
of the United States is not such an agency of the Federal
Government that its bonds are bonds or obligations of the
United States.

Chapter 328, Minnesota Laws 1907, in excepting sav-
ings banks from the exemption of all other taxes allowed
generally to other holders of real estate mortgages, paying
the registry fee, does not unlawfully discriminate against
such savings banks and does not violate the equality clause
of the Fourteenth Amendment.

In support of these contentions, see: *A. & P. R. R.* v.
*Le Seur,* 2 Arizona, 428; *Bells Gap R. R.* v. *Pennsylvania,*
134 U. S. 232; *Cent. Pac. R. R.* v. *California,* 162 U. S. 119;
*Central Pac. R. R.* v. *California,* 162 U. S. 121; *Cotting* v.
*Kansas Stock Yards,* 183 U. S. 79; *Connolly* v. *Sewer
Pipe Co.,* 184 U. S. 540; 1 Cooley on Tax., 3d ed., §§ 389–
397; *Del. R. R. Tax Cases,* 18 Wall. 206; *Duncan* v. *Mis-
souri,* 152 U. S. 377; *Dyer* v. *Melrose,* 215 U. S. 594; *Elmira
Sav. Bank* v. *Davis,* 125 N. Y. 595; *Flint* v. *Stone-Tracy
Co.,* 220 U. S. 108; *Gennette* v. *Brooklyn,* 99 N. Y. 296;
Gray, Lim. on Taxing Power, § 1630; *Grether* v. *Wright,*
75 Fed. Rep. 742; *Hibernia Saving Society* v. *San Fran-*

*cisco*, 200 U. S. 314; *Home Ins. Co.* v. *New York*, 134 U. S. 594; *Kan. Pac. R. R. Co.* v. *A., T. & S. F. R. R.*, 112 U. S. 414; *Lane Co.* v. *Oregon*, 7 Wall. 77; *Merc. Natl. Bank* v. *Mayor*, 172 N. Y. 35; *Met. St. Ry. Co.* v. *New York*, 199 U. S. 1; *Moore* v. *Treasurer*, 7 Wyoming, 292; *Mutual Benefit Ins. Co.* v. *Martin Co.*, 104 Minnesota, 179; *M'Culloch* v. *Maryland*, 4 Wheat. 316; *McMillen* v. *Anderson*, 95 U. S. 37; *Nat. Bank* v. *Kentucky*, 9 Wall. 353; *Osborne* v. *Bank*, 9 Wheat. 738; *People* v. *Ronner*, 185 N. Y. 285; *Providence Bank* v. *Billings*, 4 Pet. 514; *Phœnix Fire Ins. Co.* v. *Tennessee*, 161 U. S. 174; *Railroad Co.* v. *Peniston*, 18 Wall. 5; *St. P. &c. Ry. Co.* v. *Todd*, 142 U. S. 242; *S. W. Oil Co.* v. *Texas*, 217 U. S. 122; *State* v. *Fitzgerald*, 117 Minnesota, 192; *State Tax on Foreign Held Bonds*, 15 Wall. 300; *State* v. *West. Un. Tel. Co.*, 96 Minnesota, 22; *State* v. *West. Un. Tel. Co.*, 165 Missouri, 521; *Thompson* v. *N. P. Ry.*, 9 Wall. 579; *Van Brocklyn* v. *Kentucky*, 117 U. S. 151; *West. Un. Tel. Co.* v. *Atty. Gen.*, 125 U. S. 530; *West. Un. Tel. Co.* v. *Massachusetts*, 125 U. S. 530; *West. Un. Tel. Co.* v. *Texas*, 105 U. S. 460; *West. Un. Tel. Co.* v. *Pac. R. R. Co.*, 120 Fed. Rep. 984; *Weston* v. *Charleston*, 2 Pet. 467; *Woodruff* v. *Oswego Starch Factory*, 177 N. Y. 23.

MR. JUSTICE PITNEY delivered the opinion of the court.

This writ of error brings under review a judgment of the Supreme Court of Minnesota (114 Minnesota, 95) affirming the judgment of a lower court, in proceedings for the collection of taxes assessed against plaintiff in error for the year 1908. Plaintiff in error is a savings bank, having no capital stock, and was taxable under § 839, R. L. 1905, which provides for ascertaining the surplus remaining after deducting from its assets (other than real estate, which is separately assessed), the amount

of the deposits and of all other accounts payable; the surplus to be taxed as "credits." The Supreme Court of Minnesota held that this section imposes not a franchise but a property tax, and that the surplus of savings banks as thus determined is taxable property. This construction is not questioned here; perhaps is not open to question.

Two Federal questions are raised.

First, the Savings Bank insisted in the state courts, and here renews the insistence, that certain bonds issued by municipalities in Indian Territory and in the Territory of Oklahoma, held by the bank, amounting to about $700,000 in value, should have been omitted from the list of its personal assets, for the reason that bonds of this character are not taxable by the State.

This question, although novel, is to be solved by the application of principles long established.

It was laid down by Mr. Chief Justice Marshall, speaking for this court in *M'Culloch* v. *Maryland*, 4 Wheat. 316, 430, 436, that the State could not constitutionally impose taxation upon the operations of a local branch of the United States Bank, because the bank was an agency of the Federal Government, and the States had no power, by taxation or otherwise, to hamper the execution by that government of the powers conferred upon it by the people. The supremacy of the Federal Constitution and the laws made in pursuance thereof, and the entire independence of the General Government from any control by the respective States, were the fundamental grounds of the decision. The principle has never since been departed from, and has often been reasserted and applied. *Osborn* v. *U. S. Bank*, 9 Wheat. 738, 859; *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 513; *Grether* v. *Wright*, 75 Fed. Rep. 742, 753.

State taxation of national bank shares, as permitted by the act of Congress, without regard to the fact that a

part or the whole of the capital of the bank is invested in national securities which are exempt from taxation (*Van Allen* v. *Assessors*, 3 Wall. 573, 583; *Bradley* v. *People*, 4 Wall. 459; *National Bank* v. *Commonwealth*, 9 Wall. 353, 359), is an apparent, not a real, exception. The same is true of taxes upon the mere property of agencies of the Federal Government. (*Thomson* v. *Pacific Railroad*, 9 Wall. 579, 589; *Railroad Co.* v. *Peniston*, 18 Wall. 5, 32, 34.) Indeed, these exceptions rest upon distinctions that were recognized in the decision of *M'Culloch* v. *Maryland*. Chief Justice Marshall said, in closing the discussion: "This opinion . . . does not extend to a tax paid by the real property of the bank, in common with the other real property within the State, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the State. But this is a tax on the operations of the bank, and is, consequently, a tax on the operation of an instrument employed by the government of the Union to carry its powers into execution. Such a tax must be unconstitutional." For a fuller discussion of the *Van Allen Case*, see *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 517.

The government of the respective Territories in question was that provided by the act of Congress of May 2, 1890 (26 Stat. 81, c. 182, pp. 81, 93), of which the first 28 sections created a temporary government for the Territory of Oklahoma; while § 29 (p. 93), and subsequent sections established laws for the government of what was thereafter to be known as the Indian Territory, but without conferring general powers of local self-government. To the territorial government of Oklahoma legislative power was granted (§ 6), extending to "all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States." Municipal corporations were in contemplation. Sec. 7 provided that

the legislative assembly should not authorize the issuing of any bond or evidence of debt by any county, city, town, or township for the construction of any railroad; thus recognizing that the borrowing power might be employed for other purposes. By § 11, certain provisions of the Compiled Laws of Nebraska, in force November 1, 1889, so far as locally applicable, were extended to and put in force in the Territory until after the adjournment of the first session of its legislative assembly; among these being Chapter 14, entitled "Cities of the second class and villages," which contains provisions for the organization of municipal corporations, with power to borrow money for public purposes. The Indian Territory was not made an "organized Territory," but by § 31 certain general laws of the State of Arkansas, as published in Mansfield's Digest (1884), were put in force there until Congress should otherwise provide; among these, the chapter relating to municipal corporations (§§ 722–959).

It is not disputed that the municipal bonds now in question were lawfully authorized and are in every respect valid obligations of the respective municipalities. Except as such obligations they would hardly be treated as taxable property in the hands of the holder.

The relation of the organized Territories to the United States has been frequently adverted to. In *National Bank* v. *County of Yankton*, 101 U. S. 129, 133, which had to do with the organic act of the Territory of Dakota (12 Stat. 239), the court, speaking by Mr. Chief Justice Waite, said:

"All territory within the jurisdiction of the United States not included in any State must necessarily be governed by or under the authority of Congress. The Territories are but political subdivisions of the outlying dominion of the United States. Their relation to the general government is much the same as that which counties bear to the respective States, and Congress may

legislate for them as a State does for its municipal organizations. . . . Congress may not only abrogate laws of the territorial legislatures, but it may itself legislate directly for the local government. It may make a void act of the territorial legislature valid, and a valid act void. In other words, it has full and complete legislative authority over the people of the Territories and all the departments of the territorial governments. It may do for the Territories what the people, under the Constitution of the United States, may do for the States."

The Territory of Oklahoma, therefore, was an instrumentality established by Congress for the government of the people within its borders, with authority to subdelegate the governmental power to the several municipal corporations therein. These corporations were established for public and governmental purposes only, and exercised their powers and performed their functions as agents of the central authority. With respect to Indian Territory, the situation under the act of 1890 was somewhat different, and the municipal corporations derived their authority directly from the act of Congress.

No doubt, as is usual in such cases, the people of the respective municipalities had a more immediate and direct interest than others in the local government, and in the local improvements that presumably may have been constructed with the proceeds of the municipal bonds. But this interest was that of citizens and taxpayers, not that of proprietors. And the policy of Congress, as manifested in its legislation upon the subject, had regard not merely, nor even chiefly, for the particular and immediate interests of the several municipalities. It looked to the promotion of the prosperity and welfare of the whole people of the United States, through the development of organized self-governing communities—afterwards to become States of the Union—throughout the whole of the public domain. With statehood as the ultimate aim and

purpose, the organic acts were consciously framed. They were frequently if not always entitled—"An act to provide a *temporary* government for the Territory," etc.; and so reads the title of the act of May 2, 1890.

In our opinion, therefore, the municipalities of the Territory of Oklahoma and of Indian Territory were instrumentalities and agencies of the Federal Government, with whose operations the States were not permitted to interfere by taxation or otherwise, and the issuing of municipal bonds was the performance of a governmental function, within the established doctrine. And we deem it immaterial that these bonds were not guaranteed by the United States, or even (in the case of the Oklahoma bonds) by the central government of the Territory.

The Supreme Court of Minnesota, conceding that the municipalities were Federal agencies in the performance of governmental functions, yet deemed that a material narrowing of the doctrine of *M'Culloch* v. *Maryland*, was to be inferred from an expression contained in the opinion of this court in *National Bank* v. *Commonwealth*, 9 Wall. 353, 362, where it was said: "The principle we are discussing has its limitation, a limitation growing out of the necessity on which the principle itself is founded. That limitation is, that the agencies of the Federal government are only exempted from state legislation, so far as that legislation may interfere with, or impair their efficiency in performing the functions by which they are designed to serve that government." And from a like expression contained in the opinion in *Railroad Company* v. *Peniston*, 18 Wall. 5, 36: "It is, therefore, manifest that exemption of Federal agencies from state taxation is dependent, not upon the nature of the agents, or upon the mode of their constitution, or upon the fact that they are agents, but upon the effect of the tax; that is, upon the question whether the tax does in truth deprive them of power to serve the government as they were intended to

serve it, or does hinder the efficient exercise of their power. A tax upon their property has no such necessary effect. It leaves them free to discharge the duties they have undertaken to perform. A tax upon their operations is a direct obstruction to the exercise of Federal powers."

But we deem it entirely clear that a tax upon the exercise of the function of issuing municipal bonds is a tax upon the operations of the government, and not in any sense a tax upon the property of the municipality. And to tax the bonds as property in the hands of the holders is, in the last analysis, to impose a tax upon the right of the municipality to issue them. In *Weston* v. *City Council of Charleston*, 2 Pet. 449, 466, 468, which involved the right of the city, acting under the authority of the State of South Carolina, to ordain a tax upon United States stock in the hands of the owner, Mr. Chief Justice Marshall, speaking for the court, after reaffirming the principles settled in *M'Culloch* v. *Maryland*, said (p. 468): "The American people have conferred the power of borrowing money on their government, and by making that government supreme, have shielded its action, in the exercise of this power, from the action of the local governments. The grant of the power is incompatible with a restraining or controlling power, and the declaration of supremacy is a declaration that no such restraining or controlling power shall be exercised. The right to tax the contract to any extent, when made, must operate upon the power to borrow before it is exercised, and have a sensible influence on the contract. The extent of this influence depends on the will of a distinct government. To any extent, however inconsiderable, it is a burthen on the operations of government. It may be carried to an extent which shall arrest them entirely."

It is on this ground that United States bonds have always been held exempt from taxation under authority of the States. By like reasoning it has come to be recognized

that bonds issued by the States are not taxable by the Federal Government, and it was upon this ground that this court held, in *Pollock* v. *Farmers Loan & Trust Co.*, 157 U. S. 429, 584, that the income tax provisions of the act of August 15, 1894, were unconstitutional in that they imposed a tax upon the income derived from municipal bonds issued under the authority of the States.

It is contended by defendant in error that the situation was changed by the admission of Oklahoma as a State, combining both the Territory of Oklahoma and the Indian Territory. This was accomplished under the Enabling Act of June 16, 1906, 34 Stat. 267, c. 3335, and was evidenced by the proclamation of the President, issued November 16, 1907. By § 4 of Art. I of the Oklahoma constitution the debts and liabilities of the Territory of Oklahoma were assumed by the State.

The argument is that at the time of making the assessment for taxes against plaintiff in error, the Indian Territory and the Territory of Oklahoma had ceased to exist as such for nearly six months, and that the bonds of the municipalities of those Territories, being the obligations of the territorial government, were by the constitution assumed by the State. There seems to be no provision of law that constitutes the bonds of the municipalities obligations of the territorial governments, and so the argument falls to the ground at once.

But we are unwilling to intimate a concession that an assumption by the State of Oklahoma of the obligation to pay these bonds would operate to deprive the bondholders of the exemption from taxation, previously enjoyed. Presumably the municipal credit was enhanced and the terms of the municipal borrowing rendered more favorable, by the understanding that the bonds, being obligations of an agency of the Federal Government, would be exempt from taxation by the several States. The value of the bonds in the market was presumably thereby in-

creased. Indeed, the state court in the present case very plainly declares (114 Minnesota, 109) that bonds of the municipalities of the Territories, if not taxable by the State, command a higher price on the market than bonds of the municipalities of the States. To deprive bonds of the former description of their immunity from state taxation, and this because of the subsequent action of Congress in erecting the Territories into a State, with or without an assumption by the new State of the obligations of the former Federal agency, would be in effect to impair the obligation of the contract; and this is so inconsistent with the honor and dignity of the United States that such an intent should not be presumed without the clearest legislative language requiring it.

It is, however, further suggested that the judgment under review does not sustain a tax upon the bonds as property, but only a tax upon the surplus of the Savings Bank, computed by taking into the account all of its assets, amounting to about $12,000,000, of which the bonds were only about $700,000, and deducting therefrom its liabilities. But as the surplus is treated as property and taxed as such, it is obvious that some portion of the burden of the tax is attributable to the ownership of the municipal bonds. In *Bank of Commerce* v. *New York City*, 2 Black, 620, it was held that the State of New York in taxing the capital of banks according to its valuation must leave out of the calculation that portion of the capital invested in the stocks, bonds, or other securities of the United States not liable to taxation by the State. And see *Bank Tax Case*, 2 Wall. 200; *Home Savings Bank* v. *Des Moines*, 205 U. S. 503, 509.

It results that the inclusion of the bonds now in question in the list of the assets of plaintiff in error, in ascertaining its surplus for the purpose of imposing a state property tax thereon, was repugnant to the Constitution of the United States.

The second Federal question arises out of the insistence of the Savings Bank that it was entitled to have omitted from the computation of its surplus for purposes of taxation certain notes held by it, amounting to about $161,000, and secured by mortgages upon Minnesota real estate, upon which mortgages a registry tax had been paid.

It appears that the Minnesota legislature, by Chap. 328, Laws of 1907, provided a registry tax upon debts secured by mortgages covering real property in the State, the amount of the tax being fifty cents upon each $100, payable at or before the filing of the mortgage for record or registration. By § 3 it was enacted that "All mortgages upon which such tax has been paid, with the debts or obligations secured thereby and the papers evidencing the same, shall be exempt from all other taxes; but nothing herein shall exempt such property from the operation of the laws relating to the taxation of gifts and inheritances, or those governing the taxation of banks, savings banks, or trust companies"; with a further proviso not now pertinent.

It was and is insisted that this section, in subjecting banks, savings banks, and trust companies to double taxation upon their mortgages covering real estate in the State of Minnesota, while at the same time relieving mortgages upon such real estate, when otherwise owned, from all taxation except the registration tax, is in contravention of the "equal protection" clause of the Fourteenth Amendment.

Although the clause limiting the exemption includes banks and trust companies, the Supreme Court of Minnesota declined to consider whether the classification was proper with respect to those institutions, and so declining dealt with the status of savings banks only. Holding that this class of institutions under other laws enjoyed privileges respecting taxation that were accorded to no other person or corporation subject to taxation, the court

held that savings banks might properly be treated as a class by themselves, and required to include such mortgages in the computation of their assets for purposes of taxation.

If there is no unconstitutional discrimination against savings banks, it is for present purposes unnecessary to inquire whether the act discriminates against other banks and trust companies. *Tyler* v. *Judges*, 179 U. S. 405, 409; *Hooker* v. *Burr*, 194 U. S. 415, 419; *Hatch* v. *Reardon*, 204 U. S. 152, 160; *Southern Railway Co.* v. *King*, 217 U. S. 524, 534; *Standard Stock Food Co.* v. *Wright*, 225 U. S. 540, 550; *Rosenthal* v. *New York*, 226 U. S. 260, 271.

The Supreme Court of Minnesota lucidly summarized the state of the law which furnished, in its judgment, a sufficient reason for the classification, as follows: "Section 839, Rev. Laws 1905, treats of savings banks, for the purposes of taxation, in a special manner. They have no capital stock, yet their property is not taxed in the same way as the property of individuals or of other corporations. By section 838 the value of the stock of corporations having capital stock is ascertained by deducting the value of the real and personal property from the market or actual value of the stock, and the amount of the difference is taxed as stocks and bonds, and the real estate and personal property are taxed in the ordinary way. Section 839 places all banks without capital stock (except savings banks), brokers, and stockjobbers in one class, and savings banks in another class. The former are taxed by ascertaining the difference between the amount of money on hand or in transit, the amount of money in the hands of others subject to draft, the amount of checks or cash items, etc., the amount of bills receivable and other credits, and from the total of these amounts the deposits and accounts payable are deducted. The balance, if any, is assessed as money under Section 835. The bonds and stocks and personal and real property are assessed sep-

arately in the ordinary way. But in the case of savings banks no specific property is taxed separately except real property. Its money, checks, bills receivable, bonds, and stocks, and all personal property appertaining to the business, are listed for the purpose of ascertaining whether there is a surplus, and the surplus is found by deducting the total of the deposits and accounts payable from the total value of the assets." 114 Minnesota, 110.

For these and other reasons pointed out in the opinion, it seems to us the court was justified in holding that there were reasonable grounds for the discrimination so far as savings banks were concerned, and that plaintiff in error had therefore not been deprived of the equal protection of the laws. In lieu of further discussion we refer to the oft quoted language employed by Mr. Justice Bradley, speaking for this court, in *Bell's Gap Railroad Co.* v. *Pennsylvania,* 134 U. S. 232, 237.

But because of the error in subjecting the bonds of the municipalities of the Territories to taxation, the judgment must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

*Judgment reversed.*