EAST HELENA STATE BANK, RESPONDENT, *v.* ROGERS, COUNTY TREASURER, APPELLANT.

(No. 5,579.)

(Submitted March 23, 1925. Decided April 20, 1925.)

[236 Pac. 1090.]

*Taxation—State Banks—"Moneyed Capital"—United States Bonds not Taxable as Property of Banks.*

Taxation—Banks—"Moneyed Capital"—Definition.
1.   The "moneyed capital" of a state bank for purposes of taxation must, under section 1999, Revised Codes of 1921, be ascertained by deducting from the moneys and credits of the bank the amount of deposits and any money borrowed for use in the conduct of its business.

Same—Banks—What Constitutes Taxable Property.
2.   The real estate, furniture and fixtures and moneyed capital of a state bank constitute all of its taxable property.

Same—Tax upon Moneyed Capital of Bank a Property Tax.
3.   *Held,* that a tax upon the moneyed capital of a state bank imposed under the Classification Act (secs. 1999 and 2000, Revised Codes) is a property tax and not an occupation or franchise tax.

Same—State Banks—Property Represented by United States Bonds Exempt.
4.   Property of a state bank represented by bonds of the United States is exempt from taxation under the supreme law of the land, irrespective of the fact that it is not made so by the state Constitution or statutes.

Taxation, 37 **Cyc.**, p. 820, n. 78; p. 825, n. 17; p. 826, n. 28; p. 1032, n. 79.

*Appeal from District Court, Lewis and Clark County; W. H. Poorman, Judge.*

ACTION by the East Helena State Bank against Leslie M. Rogers, Treasurer of Lewis and Clark County, Montana. Judgment for plaintiff and defendant appeals. Affirmed.

*Mr. L. A. Foot,* Attorney General, and *Mr. C. N. Davidson,* Assistant Attorney General, for Appellant, submitted an

4.   See 26 **R. C. L.** 100.

original and a supplemental brief; *Mr. Davidson* argued the cause orally.

*Mr. A. W. O'Rourke* for Respondent, submitted a brief and argued the cause orally.

MR. JUSTICE HOLLOWAY delivered the opinion of the court.

On the first Monday of March, 1922, the value of the moneyed capital of the East Helena State Bank was $43,765, but of this amount $12,000 was invested in bonds of the United States. The return made by the bank to the county assessor disclosed these facts and the further fact that the bank claimed that the $12,000 should be deducted and its moneyed capital assessed at $31,765 only. The assessor declined to recognize the claim, but fixed the valuation at $43,765, and the taxes were thereafter levied and extended. The tax computed upon the statutory percentage of $12,000 was paid under protest, and an action was instituted by the bank against the county treasurer to recover it. A like controversy arose in 1923 and like proceedings were had. The two actions were then consolidated and tried as one, with the result that a judgment was rendered and entered in favor of the bank, and the county treasurer appealed.

The two questions presented are: (1) Is the protested tax a tax upon property of the bank? And (2) is the tax valid?

1. Our Constitution contemplates and our Codes declare that all property in this state not exempt shall be subject to taxation and that all taxable property shall be assessed at its full cash value. By section 1999, Revised Codes, all taxable property is divided into seven classes for the purpose of taxation, and class 6 includes the "moneyed capital" of state banks.

In their briefs counsel devote much attention to the defini-
[1]  tions given the words "moneyed capital" by courts of

other states, but the definitions are not of any consequence here. As the words are used in section 1999 above, their meaning is made plain. The section declares that such moneyed capital is to be ascertained by deducting from the moneys and credits of the bank the amount of deposits and any money borrowed for use in the conduct of the bank's business.

Bearing in mind that the statute (sec. 1997) declares that [2] all nonexempt property is subject to taxation; that section 1999 comprehends all taxable property in this state of whatever kind or character; and that there are not any provisions of law for the assessment and taxation of the property of a state bank, except the provisions applicable to its real estate, furniture and fixtures, and moneyed capital, we have then in effect a legislative declaration that these items, (1) real estate, (2) furniture and fixtures and (3) moneyed capital, constitute the property of the bank and all of its taxable property.

But counsel for the treasurer insist that a tax upon moneyed [3] capital is not a tax upon property, but upon the use to which the property is devoted; in other words, that it is an occupation or franchise tax. This argument condemns our entire tax statute, for if a tax on moneyed capital is not a tax on property, then our statute relieves a state bank from taxation, except upon its real estate, furniture and fixtures, in violation of the provisions of section 7, Article XII, of our state Constitution. We agree with counsel that the name by which a given imposition is designated is of little consequence and that the real character of the exaction determines whether it is a property tax or an occupation or franchise tax, but we are unable to agree with counsel that the real character of the tax in question is open to serious controversy.

"Taxes are either (1) capitation or poll taxes; (2) taxes on property; or (3) excise taxes." (1 Cooley on Taxation,

4th ed., sec. 38.) "An excise tax, using the term in its broad meaning as opposed to a property tax, includes taxes sometimes designated by statute or referred to as privilege taxes, license taxes, occupation taxes, and business taxes. * * * In the case of corporations, such taxes are often referred to as franchise taxes." (*Id.*, sec. 45.)

Our Classification Act (secs. 1999 and 2000, Rev. Codes) deals exclusively with property taxation, and furnishes the only basis upon which property taxes can be imposed. It classifies all property for the purpose of taxation, and provides that the taxes shall be computed upon the "percentage of the true and full value of the property of each class" designated in section 2000. Our corporation license tax statute (secs. 2296–2304, Rev. Codes) imposes an occupation or franchise tax upon every state bank doing business in this state, but that tax is altogether distinct from the tax imposed under sections 1999 and 2000. Furthermore, the tax in question lacks the essential elements of an occupation or franchise tax. In 26 R. C. L. 35, the distinction between a property tax and an occupation tax is pointed out as follows: "The distinction between property taxes and excises is an important one, since in many of the Constitutions there are different limitations upon the power of the Legislature with respect to the two classes of taxes. * * * An excise and a property tax, when the two approach each other, ordinarily may be distinguished by the respective methods adopted of laying them and fixing their amounts. If a tax is imposed directly by the Legislature, without assessment, and its sum is measured by the amount of business done or the extent to which the conferred privileges have been enjoyed and exercised by the taxpayer, irrespective of the nature or value of the taxpayer's assets, it is regarded as an excise; but if the tax is computed upon a valuation of property, and assessed by assessors, either where it is situated or at the owner's

domicile, although privileges may be included in the valuation, it is considered a property tax. A license tax imposed upon those who engage in a particular occupation is clearly an excise. So also a tax on a corporate franchise proportioned to the amount of its capital stock is an excise.''

The ''moneyed capital'' of the East Helena State Bank was assessed by the county assessor. The tax in question was not imposed directly by the legislature, but was computed upon the statutory percentage of the value of such moneyed capital, by the proper officer of the county.

Counsel for the treasurer argue that, if the tax be held to be a property tax, our Classification Act is invalid because it imposes a greater burden of taxation upon the property of a state bank than upon the same character of property in the hands of an individual not engaged in banking business. We think the fear expressed is groundless, and we are not impressed by the argument. The validity of the Act is not involved in this controversy, however. and will not be considered. But, even if the result anticipated by counsel should follow, it could not affect the character of the tax in question. That our Classification Act provides only for property taxes is too plain to admit of doubt. The words ''moneyed capital'' are simply convenient terms employed by the legislature to designate the property of a state bank, other than its real estate, furniture and fixtures, and the tax computed upon the value of that property is a property tax.

2. The property of the East Helena State Bank to the [4] extent of $12,000 being represented by bonds of the United States, the question remains: May the state impose a tax upon that property?

From 1818 to the present time the states and their taxing officers have resorted to every device that human ingenuity could suggest to subject the public securities of the national government to taxation for state and local pur-

poses, but uniformly without success. Maryland first undertook by statute (1818) to impose a stamp tax upon the notes issued by a branch of the United States Bank, but the Act was declared invalid by the supreme court of the United States. (*McCulloch* v. *Maryland,* 4 Wheat. 316, 4 L. Ed. 579.)

In 1823 the city of Charleston, South Carolina, by ordinance, undertook to tax government securities held in that city, but the ordinance was declared to be void. (*Weston* v. *Charleston,* 2 Pet. 449, 7 L. Ed. 481 [see, also, Rose's U. S. Notes].)

By an Act approved February 25, 1862, the Congress declared "all stocks, bonds, and other securities of the United States held by individuals, corporations, or associations, within the United States, shall be exempt from taxation by or under state authority" (12 Stats. at Large, 346); and in substantially the same terms the Act has been carried forward to the present time. (Sec. 3701, U. S. Rev. Stats. [U. S. Comp. Stats., sec. 6815].) By statute (1857) the state of New York undertook to impose taxes upon the entire capital of state banks, assessed to the banks. But the supreme court of the United States held that, to the extent that the capital was invested in bonds of the United States, the tax was in effect a tax upon the bonds themselves, and void. (*Bank of Commerce* v. *New York City,* 2 Black, 620, 17 L. Ed. 451 [see, also, Rose's U. S. Notes].) The legislature of New York then sought to escape the effect of that decision by amending the statute to read that every state bank should be liable to taxation on a valuation equal to the amount of its capital and surplus. Under the amended Act, state banks of New York claimed an exemption equal to the amount of the capital or surplus invested in government bonds, but the exemption was denied by the taxing authorities and the tax upheld by the state courts. The supreme court of the United States, however, reversed the

judgment and held that the amendment did not change the effect of the tax, that it was still a tax upon the property of the banks, and, to the extent that the property was represented by bonds of the United States, the tax was illegal. (*Bank Tax Case,* 2 Wall. 200, 17 L. Ed. 793 [see, also, Rose's U. S. Notes].)

The Codes of Iowa (1897) provided that the shares of stock of state savings banks should be assessed to such banks, and not to the individual stockholders. Savings banks in Iowa, each holding a portion of its capital invested in government securities, claimed that the amounts so invested should be deducted from the valuation of the property so assessed but the taxing authorities refused to recognize the claim and their action was upheld by the supreme court of the state. The judgment was reversed by the supreme court of the United States, and it was held that the tax was in effect a tax upon the property of the banks, and to the extent that the property was represented by government securities, the tax was illegal. (*Home Savings Bank* v. *Des Moines,* 205 U. S. 503, 51 L. Ed. 901, 27 Sup. Ct. Rep. 571 [see, also, Rose's U. S. Notes].)

Under section 839, Revised Laws of Minnesota 1905, the property of state savings banks subject to taxation, other than real estate, was declared to be the difference between the total assets, other than real estate, and the amount of deposits and other accounts payable, and this difference was designated "credits." The Farmers & Mechanics' Savings Bank of Minneapolis had, as a part of its credits, bonds of the value of $700,000, issued by municipalities in the Indian Territory and the territory of Oklahoma, and claimed as a deduction from its total credits subject to assessment, an amount equal to the value of the bonds. The state tax officials refused to allow the deduction, and their action was approved by the supreme court of the state. The judgment was reversed by the supreme court of the United

States, and it was held that the territories were instrumentalities of the general government, the municipalities but agents of the territories, and their public securities entitled to immunity from taxation upon the same theory that the direct obligations of the general government are exempt. (*Farmers & Mechanics' Sav. Bank* v. *Minnesota,* 232 U. S. 516, 58 L. Ed. 706, 34 Sup. Ct. Rep. 354 [see, also, Rose's U. S. Notes].)

In view of this history, it is the height of folly for state tax officials longer to indulge the hope that they may invent some scheme by which to subject the public securities of the United States to taxation for state or local purposes.

This state had the option to tax the shares of stock in state banks to the individual shareholders, or to tax the property of such banks to the banks themselves. It could not tax both at the same time. (Sec. 17, Art. XII, Constitution of Montana.) If it had chosen the first alternative, it might then have assessed the shares at their full cash value without reference to the character of the securities in which the bank's funds were invested (*Van Allen* v. *Assessors,* 3 Wall. 573, 18 L. Ed. 229 [see, also, Rose's U. S. Notes]); but it chose to tax the property of the banks, and must abide the consequences.

A state may lawfully impose an excise or occupation tax upon a state bank, as this state does by sections 2296–2304, Revised Codes, and may compute such tax upon the value of the franchise, the amount of deposits, or the net profits of the business, and that, too, without reference to the character of the bank's investments (*Society for Savings* v. *Coite,* 6 Wall. 594, 18 L. Ed. 897 [see, also, Rose's U. S. Notes]; *Provident Institution* v. *Massachusetts,* 6 Wall. 632, 18 L. Ed. 907; *Home Ins. Co.* v. *New York,* 134 U. S. 594, 33 L. Ed. 1025, 10 Sup. Ct. Rep. 593; *Plummer* v. *Coler,* 178 U. S. 115, 44 L. Ed. 998, 20 Sup. Ct. Rep. 829); but the distinction between a tax upon the property of the bank,

on the one hand, and a tax upon the shares of stock assessed to the individual shareholders, or a tax upon the franchise, on the other, is emphasized by the court in *Home Savings Bank* v. *Des Moines,* above.

It is suggested by counsel for the treasurer that, if the ruling here announced be adhered to, a state bank may invest only a small portion of its funds in real estate, furniture and fixtures, and the balance in government bonds, and thereby practically escape property taxation. This is true and it is just what did occur in one of the cases cited above. The Bank of Commerce of New York City had a total capital of more than $9,000,000, of which sum less than $400,000 was invested in real estate, and the balance, more than $8,000,000 was invested in government bonds. But the supreme court of the United States held that the state could not tax the portion of the bank's property represented by the government securities. (*Bank of Commerce* v. *New York City,* above.) However, the exemption privilege is not extended to state banks, as such, but to every corporation, association and individual. Any other corporation, or any individual, may invest its or his entire capital in government bonds and thereby escape property taxation altogether, but that fact does not affect the rule declared by the supreme court and by the Congress. Property represented by bonds of the United States is absolutely exempt from taxation by the states, and the rule is not subject to evasion by any sort of subterfuge. There cannot be drawn any distinction between the tax involved in *Farmers & Mechanics' Sav. Bank* v. *Minnesota,* above, and the tax involved in this instance.

It is true that in enumerating the property exempt from taxation neither our state Constitution (Art. XII, sec. 2) nor statute (sec. 1998, Rev. Codes) includes by name the public securities of the general government, but they are made exempt by the Constitution and laws of the United States, and the federal Constitution declares: This Con-

stitution, and the laws of the United States which shall be made in pursuance thereof; and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land; and the judges in every state shall be bound thereby, anything in the Constitution or laws of any state to the contrary notwithstanding." (Art. VI, Const. United States.)

In holding that the tax in question is a tax upon the property of the East Helena State Bank, and to the extent that such property is represented by bonds of the United States, the tax is illegal, the trial court did not err, and its judgment is affirmed.

*Affirmed.*

MR. CHIEF JUSTICE CALLAWAY and ASSOCIATE JUSTICES GALEN, STARK and MATTHEWS concur.