(121 So. 14)

WILLIAMS v. CITY OF BIRMINGHAM et al.
(6 Div. 156.)

Supreme Court of Alabama. March 21, 1929.

Fort, Beddow & Ray, of Birmingham, for appellant.

Wilkinson & Burton, of Birmingham, for appellees.

20

compensation. The city is required to appropriate to the park and recreation board annually a minimum amount of $50,000. The board is vested with the power to acquire and operate for the city public parks and playgrounds. It is also provided that in establishing and conducting such activities the city shall be engaged in public and governmental functions.

We have had numerous cases in Alabama against cities for alleged tortious conduct, when the liability of the city depended upon the question of whether it was then engaged in a corporate function, or a public and governmental function, holding that it is liable when engaged in a corporate function and not liable when engaged in a public and governmental function. We do not seem to have had a case in Alabama when the acts in question related to the operation of parks or recreation centers.

The cases are numerous to the effect that, in the construction or maintenance of a street, the function is corporate, and a liability accrues for negligent injuries by the servants of the city in the line of their duty in this work. Some of the cases may be cited as follows: Birmingham v. Whitworth, 218 Ala. 603, 119 So. 841; Hillman v. City of Anniston, 214 Ala. 522, 108 So. 539, 46 A. L. R. 89; Id., 216 Ala. 661, 114 So. 55; Bessemer v. Barnett, 212 Ala. 202, 102 So. 23; Birmingham v. McKinnon, 200 Ala. 111, 75 So. 487; Bessemer v. Whaley, 187 Ala. 525, 65 So. 542, and many other cases cited in them, not necessary here to repeat.

Many relations are pointed out in the cases above cited, distinguished as governmental from corporate functions. Perhaps the one nearest akin on principle to that we are considering relates to health and sanitation. Tuscaloosa v. Fitts, supra. It is said, because the function is delegated to the city "to promote public health and comfort to the public as a whole," it is governmental, and the city is not liable for the torts of its agents.

Going to other jurisdictions we find that there is conflict in the decisions. This is pointed out in 6 McQuillin, Mun. Corp. (2d Ed.) § 2850. It is there shown that a majority of the states hold that it is a governmental function with no liability. "On the other hand, as mentioned in many states the management of a public park, owned by and in the exclusive control of the municipality, is regarded as a corporate duty, and negligence resulting in private injuries growing out of the management thereof may be a ground of liability. However, even in states denying liability for injuries in parks, it is held that if the negligence arises, directly from the control of property actually in use by the municipality in its private capacity (as where a part of a park or buildings thereon are lawfully rented to third persons), the municipality is liable; but it is held in Rhode

FOSTER, J. ▉ This is an action against the city and the members of the park and recreation board of the city for the negligent shooting of plaintiff's intestate by the caddy master on the public golf links of the city, alleged to be the servant, agent, or employé of defendants in the operation of the golf links at Highland Park Country Club, a public city park. The court takes judicial notice of the public operations of the city of Birmingham, and its ordinances, laws, and by-laws. Acts 1915, p. 297, § 7.

▉ The park in question may be assumed, by judicial notice, or on the theory of adverse inferences chargeable against plaintiff, to be a public enterprise, conducted by the city for the welfare of its citizens and the public generally, under the Act of September 29, 1923 (Acts 1923, p. 707). City of Tuscaloosa v. Fitts, 209 Ala. 635, 96 So. 771.

Under such act the power is given the city to provide parks, playgrounds, recreational centers, or park areas by and through a park and recreation board named by the city. There is provision made for reasonable fees or charges for access to or use or enjoyment of any playground, etc., conducted by the city, to be paid into and become a part of the park and recreation fund of the city. The members of the board serve as such without

Island that the fact that a purely incidental profit results to the municipality from the maintenance of the park does not render the municipality liable. In another line of decisions a recovery has been held improper in case of injuries in parks, on other grounds,. without referring to whether the municipality would be liable under any conditions. · In Tennessee such duty is public, 'based upon the obligation of the municipality as a branch of the state government, to guard and preserve and maintain the public health.' It is so in Wisconsin, and California. And in Washington the doctrine obtains that the operation or improvement of a park, not for profit, is the exercise of a governmental function. A like doctrine, it seems, prevails in Kansas and Iowa. In Georgia the maintenance of a park by a municipality is held to be a governmental function, although a purely incidental profit might result from its management, but if the park is maintained primarily as a source of revenue the duty of the municipality to maintain it in a safe condition is viewed as ministerial and municipal liability may arise in case of injury from the negligent performance of such duty. In Nebraska, it appears, the maintenance of parks by cities and towns is a governmental function, irrespective of the fact that a small revenue may arise from the diversions therein provided. In Massachusetts liability may be imposed only by statute. The liability, it has been stated, may be based on the theory that where a power is given and a duty imposed, a corresponding liability arises for the proper exercise thereof, and sometimes an analogy between parks and streets in this respect is drawn. Liability for injuries on park roads and ways may sometimes rest on the same ground as the liability for defective streets or sidewalks." 6 McQuillin, Mun. Corp. (2d Ed.), supra. This conflict is also pointed out (citing the cases) in 43 Corpus Juris, 1170, 1172, and in Dillon on Municipal Corporations (5th Ed.) § 1659, 19 R. C. L. pp. 763, 1129.

There being no uniform rule in this respect established in the country at large, we must choose our own path. In doing so, due consideration should be given the legislative provision in the Act of 1923 that this is a public and governmental function. It may be conceded that the question is judicial and not legislative in its nature, and that the Legislature cannot by a declaration make a public governmental function out of one which is inherently merely corporate in its nature. But that question is not necessary here for decision, because we think that, to hold the function public and governmental, and not merely corporate or ministerial, is in the spirit of the decisions heretofore rendered by this court, and is our idea of the correct interpretation of such service to the public by a city.

The judgment of the circuit court in sus-

taining demurrers to the complaint addressed to the points we have considered expressed the views of this court. It is accordingly affirmed.

Affirmed.

ANDERSON, C. J., and GARDNER and BOULDIN, JJ., concur.