# COMMISSIONER OF INTERNAL REVENUE v. SHERMAN.

## No. 2863.

Circuit Court of Appeals, First Circuit.
March 14, 1934.

J. P. Jackson, Sp. Asst. to Atty. Gen. (Sewall Key and J. Louis Monarch, Sp. Assts. to Atty. Gen., on the brief), for Commissioner of Internal Revenue.

Lawrence E. Green, of Boston, Mass. (Reginald Heber Smith and Hale & Dorr, all of Boston, Mass., on the brief), for Sherman, executrix.

Before WILSON and MORTON, Circuit Judges, and LETTS, District Judge.

WILSON, Circuit Judge.

This is an appeal from a decision of the Board of Tax Appeals, holding that the salary of the superintendent of public parks in the city of New Bedford in the commonwealth of Massachusetts was not subject to an income tax for the taxable year 1929.

In 1882 the Massachusetts Legislature passed an act authorizing each town and city in that commonwealth by a majority vote to create a board of park commissioners, with authority to locate public parks within its limits by taking land in fee by eminent domain, or by purchase, gift, devise, or otherwise; to lay out and improve such parks; make rules for their use and government, appoint certain employees, including police to act in such parks, define their powers and fix their compensations; and the land so taken, by the terms of the statute, shall be forever kept open and maintained as a public park. Chapter 45, G. L. Mass.

In 1890 the city of New Bedford by a majority vote adopted the provisions of the act, and the park commissioners appointed in that city have since acquired three large parcels of land, which are maintained for the free use of the public.

The board of park commissioners is vested with authority under the act to take over any ways connecting such parks with other parts of the town, or may add to such parks any way or part thereof adjoining or parallel with any boundary line of such park. It has all the powers given to a mayor and aldermen, selectmen, road commissioner, respectively, to make repairs of ways and remove obstructions therefrom, and of tree wardens in respect to shade trees and to improving, protecting, and ornamenting public ways.

The city of New Bedford as a municipality has no direct oversight of its park system, and receives no income from concessions granted within the parks, or any income whatsoever from their use, though it appropriates money to acquire land and to pay the expenses of maintenance, but cities appropriate money to maintain a police force and for the salaries of firemen, health officers, and municipal judges, who are recognized as state and not local officers.

The appellee's testator was appointed by the board of park commissioners under its authority to appoint employees, define their powers, and fix their compensations.

Up to 1917, the Revenue Acts contained a provision exempting the compensation of all officers and employees of a state or any political subdivision thereof. The Act of 1918 and the subsequent acts contain no such provision. The right of the federal government to tax the salaries of the officials and employees of a state or any political subdivision thereof was left to be determined by the courts under the Constitution.

In a regulation promulgated under the 1928 Act, the Treasury Department provided that: "Compensation received for services rendered to a state or political subdivision thereof is included in gross income unless (a) the person received such compensation as an officer or employee of a state or political subdivision, and (b) the services are rendered in connection with the exercise of an essential governmental function."

What is meant by an "essential governmental function" is not clear. It was probably adopted because of some language found in Flint v. Stone Tracy Co., 220 U. S. 107, 172, 31 S. Ct. 342, 357, 55 L. Ed. 389, Ann. Cas. 1912B, 1312. The question in that case, however, was not under an Income Tax Act, but involved the issue of whether the government could impose an excise tax on the right of certain corporations created by a state to do business.

While the right to create corporations to do many kinds of business is conceded to be among the powers of a state, it cannot be said that the creation of business corporations by a state is one of its governmental functions, or that it is exercised in favor of the public, except indirectly, in promoting the business interests of the state, and which are always operated with the expectation of profit. It is not one of its police powers exercised solely to promote the public safety, health, morality, or the general welfare which is recognized as a governmental function of every state, and essential to promote the happiness and well-being of all its citizens. It was in this sense, we think, that the court in Flint v. Stone Tracy Co., supra, used the expression, "an essential governmental function," and when it said, in further defining it, that, "The true distinction is between the attempted taxation of those operations of the states essential to the execution of its governmental functions, and which the state can only do itself, and those activities which are of a private character," the court did not mean that the exercise of a governmental function in the interest of the public, such as the establishing of schools, or providing police and fire protection, was

any less an essential governmental function in distinction from a private business because it was vested by the state in one of its political subdivisions.

A private corporation cannot exercise governmental functions, nor does a corporation exercise a governmental function simply because it is performing a public service, when it does so for profit; but governmental functions may be exercised by the officers and employees of political subdivisions of the state, whenever a state entrusts to or imposes upon one of such political subdivisions the duty of exercising certain of its governmental functions in the interest of the public health and safety and welfare of its citizens; and any official or employee of the state or of such political subdivision engaged in the exercise of such functions is immune from federal taxation.

In discussing the question as to what instrumentalities of government are exempt from taxation, the Supreme Court, in the case of Indian Motocycle Co. v. United States, 283 U. S. 570, 575, 51 S. Ct. 601, 602, 75 L. Ed. 1277, said:

"It is an established principle of our constitutional system of dual government that the instrumentalities, means and operations whereby the United States exercises its governmental powers are exempt from taxation by the states, and that the instrumentalities, means and operations whereby the states exert the governmental powers belonging to them are equally exempt from taxation by the United States. This principle is implied from the independence of the national and state governments within their respective spheres and from the provisions of the Constitution which look to the maintenance of the dual system. Collector v. Day, 11 Wall. 113, 125, 127, 20 L. Ed. 122; Willcuts v. Bunn, 282 U. S. 216, 224, 225, 51 S. Ct. 125, 75 L. Ed. 304 [71 A. L. R. 1260]. Where the principle applies is not affected by the amount of the particular tax or the extent of the resulting interference, but is absolute."

Again, in the case of Burnet v. Coronado Oil & Gas Co., 285 U. S. 393, 400, 52 S. Ct. 443, 445, 76 L. Ed. 815, the court said:

"The states are essential parts of the plan adopted by the Federal Constitution; and we accept as settled doctrine that the United States can lay no tax upon their governmental instrumentalities. Texas v. White, 7 Wall. 700, 725, 19 L. Ed. 227; Collector v. Day, 11 Wall. 113, 20 L. Ed. 122; Pollock v. Farmers' Loan & Trust Co., 157 U. S. 429, 584, 15 S. Ct. 673, 39 L. Ed. 759; Farmers' Bank v.

Minnesota, 232 U. S. 516, 527, 34 S. Ct. 354, 58 L. Ed. 706."

And the court then quoted with approval the above quotations from the case of Indian Motocycle Co. v. United States, supra, and added: "Each government is supreme in its sphere; and in order to preserve our dual system this fact must be given practical recognition."

In Metcalf & Eddy v. Mitchell, 269 U. S. 514, 522, 46 S. Ct. 172, 174, 70 L. Ed. 384, the court said:

"Just what instrumentalities of either a state or the federal government are exempt from taxation by the other cannot be stated in terms of universal application. But this court has repeatedly held that those agencies through which either government immediately and directly exercises its sovereign powers, are immune from the taxing power of the other. Thus the employment of officers who are agents to administer its laws (Collector v. Day; Dobbins v. Commissioners of Erie County, supra [16 Pet. 435, 10 L. Ed. 1022]), its obligations sold to raise public funds (Weston v. City Council of Charleston, supra [2 Pet. 449, 7 L. Ed. 481]; Pollock v. Farmers' Loan & Trust Co., supra); its investments of public funds in the securities of private corporations, for public purposes (United States v. Railroad Co., supra [17 Wall. 322, 21 L. Ed. 597]), surety bonds exacted by it in the exercise of its police power (Ambrosini v. United States, supra [187 U. S. 1, 23 S. Ct. 1, 47 L. Ed. 497]), are all so intimately connected with the necessary functions of government, as to fall within the established exemption; and when the instrumentality is of that character, the immunity extends not only to the instrumentality itself but to income derived from it (Pollock v. Farmers' Loan & Trust Co.; Gillespie v. Oklahoma, supra [257 U. S. 501, 42 S. Ct. 171, 66 L. Ed. 338]), and forbids an occupation tax imposed on its use."

It is significant, we think, that in none of the recent cases where this issue has arisen, has the Federal Supreme Court adopted the language used in Flint v. Stone Tracy Co., supra; in fact, the language used in cases cited above is only susceptible of a broader interpretation.

While, as stated in Metcalf & Eddy v. Mitchell, supra, at page 523 of 269 U. S., 46 S. Ct. 172, 174, it is impossible to lay down any formula that can be applied to all cases, "recourse may be had to the reason upon which the rule rests, and which must be the guiding principle to control its operation.

Its origin was due to the essential requirement of our constitutional system that the federal government must exercise its authority within the territorial limits of the states; and it rests on the conviction that each government in order that it may administer its affairs within its own sphere, must be left free from undue interference by the other."

It is urged that to tax the salary of a superintendent of public parks cannot in Massachusetts burden the functions of the state government sufficiently to hold that it is such a substantial interference as to exempt such official from taxation, but as the court said in Indian Motocycle Co. v. United States, supra: "Where the principle applies it is not affected by the amount of the particular tax or the extent of the resulting interference, but is absolute" (italics supplied), citing McCulloch v. Maryland, 4 Wheat. 316, 431, 4 L. Ed. 579, in which the great Chief Justice Marshall aptly said: "The power to tax involves the power to destroy."

In the recent case of Powers v. Commissioner of Internal Revenue, 68 F.(2d) 634, decided January 9, 1934, this court held that the salaries of the trustees of the Boston Elevated Railway created by an act of the commonwealth of Massachusetts were exempt from the federal income tax, since they were not only state officers, but in the course of their duties exercised some of the very necessary functions of government, viz., to impose taxes and determine absolutely the rates of fare of a public service corporation, although they were also administering the affairs of a corporation for profit.

The commonwealth of Massachusetts was exercising an important governmental function, which might well be classed as essential to the health and welfare of its citizens, when it took steps under chapter 45 of its General Laws to create public parks in the various towns and cities throughout the commonwealth, by conferring on its political subdivisions the authority to elect a board of park commissioners which should have the power to take land by eminent domain and by deed, gift, or devise, and develop such land in the manner described therein for the sole and free use of the public. It is significant, we think, that it did not by a special act authorize New Bedford to create and maintain local public parks or any other particular city or town, but passed a general law, though not compulsory, applying to the entire commonwealth.

Parks created and developed under chapter 45 of its General Laws are not local. It was the evident intent of the Legislature to create by a general law a system of public parks throughout the entire state that would be open to the free use of the public, whether permanent or temporary residents of the town or city in which they were located, or residents of other adjoining towns or cities.

The Massachusetts court, in an able opinion by its Chief Justice in Higginson v. Treasurer, etc., of Boston, 212 Mass. 583, 588, 99 N. E. 523, 526, 42 L. R. A. (N. S.) 215, has pointed out, in language far better than we can express it, the public character of parks created under this act in Massachusetts:

"It has been decided also in substance that the acquisition, control and management of public parks belongs primarily to the state. Municipalities in this particular act as governmental agencies under an authority delegated by the state, and are always subject to the Legislature." Citing many authorities.

"Passing from a consideration of the authorities to the underlying principles, which in reason must govern, a park of the nature here in question appears to be for the general public rather than for the municipality in its proprietary capacity. The use of the park is in kind analogous to those confessedly public. It closely resembles roads and bridges. These are open to general public travel without reference to the residence of the traveler. The enjoyment of public parks hardly can be restricted to residents of a particular city or town. They cannot be made a source of revenue as may a system of water works or sewerage or gas, electric light or markets. Their use by those most needing them might be prevented by any pecuniary charge. Historically, the advantages derived from parks never have been treated as proper subjects for private enterprise as have the other functions, which, when assumed by the city or town, have been regarded as private. On the contrary, parks in the proper sense to which the public are regularly admitted have been inseparably connected with a public agency. The pleasure resorts authorized by St. 1906, c. 463, pt. 3, § 34, for street railway companies and kindred places are different in kind from a public park. Although the establishment of this park was permissive and not compulsory, this distinction is not decisive. It is the character of the use which stamps a given municipal venture as public or proprietary. Tindley v. Salem, 137 Mass. 171, 176, 50 Am. Rep. 289. Adopting this as the test, the dominant aim in the establishment of public parks appears to be the common good

of mankind rather than the special gain or private benefit of a particular city or town. The healthful and civilizing influence of parks in and near congested areas of population is of more than local interest and becomes a concern of the state under modern conditions. It relates not only to public health in its narrow sense, but to broader considerations of exercise, refreshment and enjoyment. We should hesitate to say that the state would be powerless to exert compulsion if a city or town should be found so unmindful of the demands of humanity as to fail to provide itself with adequate public grounds. The municipal spirit which dictates an extensive park system is the same in kind as that which provides fine streets and avenues, beautiful bridges and ample public schools of a high standard of efficiency, all distinctly public in their nature. The end subserved by these instrumentalities is essentially the same general public good."

■ Whatever may have been the early tendency of the courts in this respect, we think that the modern view, supported by the weight of authority, is that the creation and maintenance of public parks is a governmental function of a state and its exercise is essential to the health and general welfare of all the citizens of a state. Williams v. City of Birmingham, 219 Ala. 19, 121 So. 14 (1929); Kellar v. City of Los Angeles, 179 Cal. 605, 178 P. 505 (1919); Epstein v. City of New Haven, 104 Conn. 283, 132 A. 467 (1926); Cornelisen v. City of Atlanta, 146 Ga. 416, 91 S. E. 415 (1917); Norman v. City of Chariton, 201 Iowa, 279, 207 N. W. 134 (1926); Harper v. City of Topeka, 92 Kan. 11, 139 P. 1018, 51 L. R. A. (N. S.) 1032 (1914); Board of Park Commissioners v. Prinz, 127 Ky. 460, 105 S. W. 948 (1907); Godfrey v. City of Shreveport, 6 La. App. 356 (1927); Heino v. City of Grand Rapids, 202 Mich. 363, 168 N. W. 512, L. R. A. 1918F, 528 (1918); Emmons v. City of Virginia, 152 Minn. 295, 188 N. W. 561, 29 A. L. R. 860 (1922); Caughlan v. Omaha, 103 Neb. 726, 174 N. W. 220 (1919); Bisbing v. Asbury Park, 80 N. J. Law, 416, 78 A. 196, 33 L. R. A. (N. S.) 523 (1910); Blair v. Granger, 24 R. I. 17, 22, 51 A. 1042 (1902); Nashville v. Burns, 131 Tenn. 281, 174 S. W. 1111 (1915); Alder v. Salt Lake City, 64 Utah, 568, 231 P. 1102 (1924); Russell v. Tacoma, 8 Wash. 156, 35 P. 605, 40 Am. St. Rep. 895 (1894); Bernstein v. City of Milwaukee, 158 Wis. 576, 149 N. W. 382, L. R. A. 1915C, 435 (1914); Bolster v. City of Lawrence, 225

Mass. 387, 114 N. E. 722, L. R. A. 1917B, 1285.

The respondent's testator was an officer or employee appointed by the board of park commissioners created in New Bedford, but whether an officer or employee of the state or city, Blair v. Granger, 24 R. I. 17, 22, 51 A. 1042, is immaterial, his duties being to execute the laws of the state and orders of the board of park commissioners in establishing and maintaining free public parks within the limits of the city; he is immune from taxation by the federal government.

The decision of the Board of Tax Appeals is affirmed.