# Jones *et al. v.* Nashville, Chattanooga & St. Louis Ry.

### *Bill in Equity for Injunction.*

1. *Constitutional law; construction of statute.*—An Act of the Legislature of Alabama which authorizes a railroad company, incorporated under the laws of Tennessee, to construct its road through a certain portion of a designated county in this State, and then provides that said railroad company "shall have and enjoy all the rights, privileges and immunities, and be subject to such restrictions as are granted to and imposed upon said company by the act [of the Legislature of Tennessee] incorporating the same as far as said railroad lies in the "designated county," without disclosing the provisions of the act of incorporation, is insufficient to give to such railroad company the same rights as it enjoyed in the State of Tennessee, under the act incorporating it.

2. *Same; same.*—Said act, so far as it attempted to give to the railroad company, the right to take an easement in lands without giving to the owner thereof just compensation, or without entering into an agreement therefor with the owner, is unconstitutional and confers no power to take a right of way without due process of law.

[Jones *et al.* v. Nashville, Chattanooga & St. Louis Ry.]

APPEAL from the Chancery Court of Jackson.

Heard before the Hon. WILLIAM H. SIMPSON.

The bill in this case was filed by the appellee against the appellants, to have the respondents enjoined from interfering with the servants and employees of the plaintiff, in entering within the enclosures of the respondents, and removing the respondents' fences, and constructing a side track for the use of the company. The grounds upon which the relief is sought, and the facts as averred in the bill are sufficiently shown in the opinion. The respondents demurred to the bill upon many grounds, among which were the following: 1. The bill shows complainant has no title or easement for railroad purposes in the strip of lands sought to be appropriated as set out in the bill. 2. The bill shows that respondents are in possession of said lands under claim of title, and complainant seeks the aid of an injunction to protect itself in the trespass on said lands. 3. The bill shows that complainant seeks to take private property for public use without just compensation first paid to the owner. 4. The bill shows that complainant seeks to deprive respondents of their property without due process of law. 6. The bill is without equity in that it shows a want of title in complainant, seeks to oust respondents of their possession by writ of injunction, under its protection to commit a trespass on their lands, and to take their property without just compensation, and deprive them thereof without due process of law.

The respondents also moved to dismiss the bill for the want of equity, and also filed a separate motion to dissolve the temporary injunction, which had been issued in said cause for the want of equity in the bill. Upon the submission of the cause upon the demurrers and motions, the chancellor rendered a decree overruling each of them. From this decree the respondents appeal and assign the rendition thereof as error.

VIRGIL BOULDIN, for appellants.—1. The act of the General Assembly of Alabama relied upon did not grant

a right of way through lands in Alabama to be taken as prescribed in the charter, leaving to land owners the remedies and a course of procedure set forth only in a foreign charter, of which the citizens of Alabama had no notice, and probably a course of procedure not applicable to our institutions.—1 Thompson on Private Corporations, § 321; *Pittsburg, Ft. W. & C. R. R. Co. v. Michael Reich*, 101, 111, 157.

(2.) If the Alabama act be construed as re-enacting in the State of Alabama all the provisions of the foreign charter as to the acquirement of rights of way, then the act was invalid because the provisions of Section 25 of the foreign charter were in violation of the Constitution of Alabama 1819, Art. 1, Sec. 13, which declared: "Nor shall any person's property be taken or applied to public use, unless just compensation is made therefor." It is violative of this provision of the constitution in this: It sets forth no method of procedure whatever, and none is shown by the bill, whereby the owner might obtain just compensation.—*Mont. So. Ry. Co. v. Sayre*, 72 Ala. 443-447-8; *Sadler v. Langham*, 34 Ala. 329 *et seq; Aldridge v. Tus. C. D. R. R. Co.*, 2 S. & P. 215 *et seq; Jones v. N. O. & S. R. R. Co.*, 70 Ala. 227; *Burden v. Stein*, 27 Ala. 116 (of opinion); 2 Kent's Commentaries, 339 and note; *Moale v. City of Baltimore*, 61 Am. Dec. 276 and note; *Bird v. Wilmington Etc. R. R. Co.*, 64 Am. Dec. 372 and note; *Commonwealth v. Pittsburg, Etc.*, 62 Am. Dec. 372.

(3). The Tennessee charter, if construed as supporting the claims to the lands in suit as set up in the bill, is violative of the Constitution of Alabama, 1819, Art. 1, Sec. 10, declaring that no person shall be deprived of life, liberty or property "but by due course of law." "Due course of law" as a safeguard to property rights, will not permit that by the rightful or tortious taking of so much of another's property the taker shall thereby by the aid of legislative edict become entitled to take more at pleasure, and have the aid of a court of equity to consummate the spoliation by an injunction. I invite the court's attention to the following authorities: *Chicago, Burlington & Quincy R. R. Co. v. City of Chi-*

*cago,* 166 U. S. P., 226, 233 *et seq.* and authorities cited in the opinion; *Dorman v. State,* 34 Ala. 236, 237; 3 Am. & Eng. Ency. Law, (1st ed.) 716 and note; *Sadler v. Langham,* 34 Ala. 329 *et seq; Ex parte McDonald,* 76 Ala. 603, 606; *Calhoun v. Fletcher,* 63 Ala. 574, 583-4; *Zeigler v. S. & N. R. R. Co.,* 58 Ala. 594, 598-9; *Cochran v. Van Surley,* 32 Am. Dec. 574.

(4.) A railroad company taking possession of and improving a right of way without grant or condemnation acquires a right by adverse possession or by way of estoppel to only such lands as are in its possession. *Hendrix v. So. Ry. Co.,* 130 Ala. 205; *N. C. & St. L. Ry. v. Hammond,* 104 Ala. 191; *Ala. Midland Ry. v. Brown* 98 Ala. 647.

OSCAR R. HUNDLEY, *contra.*—Under the terms of its charter the railroad obtained an *easement only,* in the real esate, and the owner of the fee could use such portion thereof as was not needed for railroad purposes, and such use by the owner of the fee could never ripen into a title to the easement, because the use of the property by the owner of the fee could not be *adverse* to that of the railroad, for the railroad had no right to use the portion of the right of way not needed for railroad purposes, until it was actually needed therefor.—*Kansas City Ry. Co. v. Allen,* 22 Kan. 285; 31 Am. Rep. 190; *East Ala. R. Co. v. T. & C. R. Co.,* 78 Ala. 274, 281, 282. The owner of the fee could use the land for any purpose he desired, *not inconsistent* with that of the railroad. *Railway Co. v. Telfor's Executors,* 5 Pickel 293; s. c. 14 S. W. Rep. 776; *L. & N. R. R. Co. v. French,* 16 Pickle 209; 43 S. W. Rep. 771.

(2.) There is no such question involved in this case as the taking of property without due process of law. It is simply a question of the right of the railroad to use its right of way for railroad purposes without interference from the appellants. Nor is there any question presented here of the taking of private property for public use without compensation. A case is here presented where the appellee is prevented by the acts of the appellants from *exercising its rights of franchise.* A case,

too, is presented of "irreparable injury to the complainant, followed by a grave interference with public interest." The railroad is prevented from building its track, so as to widen its platform, for the purpose of the proper and safe conduct of its business. The appellants are insolvent, and any injury which might occur to the public or the railroad, by not building the track and making such improvements as the *safety of the public demands,* could not be responded to in damages. Where the exercise of the rights of franchise are involved, a court of equity will not refuse to interfere by injunction, for the reason that the attempted destruction of the right of franchise is accompanied by acts of personal trespass.—*Port of Mobile v. L. & N. R. R. Co.,* 84 Ala. 115; *City Council of Montgomery v. L. & N. R. R. Co.,* 84 Ala. 127.

HARALSON, J.—The Nashville, Chattanooga & St. Louis Railway Company, filed its bill against the defendants, to prevent interference with the employes of the company in removing defendant's fences from their land and constructing a side track for the use of the company.

Defendants filed a demurrer on specified grounds, going to the equity of the bill, moved to dismiss for want of equity, and to dissolve the temporary injunction issued in the cause. From a decree overruling the demurrer the appeal is prosecuted.

The right of the complainant is rested solely on the terms of Section 25 of its Tennessee charter, passed on the 11th of December, 1845, and on an act of the General Assembly of Alabama, approved January 21, 1850, (Acts of 1849-50, p. 171). The bill sets out in full said section 25 of the charter of said company in Tennessee, when—in the absence of any contract with the said charter, which section is as follows: "Section 25. In the absence of contract, right of way one hundred feet, when—In the absence of any contract with the said company in relation to land through which the said road may pass, signed by the owner thereof, or by his agent or any claimant or person in possession thereof,

which may be conferred by the owner, it shall be presumed that the land upon which the said road may be constructed, together with a space of one hundred feet on each side of the center of said road, has been granted to the company by the owner thereof, and the company shall have a good right and title thereto, and shall have, hold and enjoy the same as long as the same may be used only for the purpose of the road, and no longer, unless the person or persons owning the said land at the time that part of the road which may be on said land was finished, or those claiming under him, her or them shall apply for an assessment for the value of said lands, as hereinbefore directed, within five years next after that part of said road was finished, he, she or they shall be forever barred from recovering the said land, or having any assessment of compensation therefor; provided, nothing herein contained shall effect the right of *feme covert* or infants until two years after the removal of their respective disabilities."

No part of the Alabama act is set out except the following: "Section 1. Be it enacted by the Senate and House of Representatives of the State of Alabama, in General Assembly convened, That the Nashville & Chattanooga Railroad Company be, and they are hereby authorized to construct their road through the northern portion of Jackson county, in this State, and they shall have and enjoy all the rights, privileges and immunities, and be subject to such restrictions, as are granted to and are imposed upon said compnay by the act incorporating the same, as far as said railroad lies in the county of Jackson," etc.

Section 10, Art. 1, of the Constitution of this State, 1819, provides that no person "shall be deprived of his life, liberty or property, but by due process of law." In the constitutions of nearly all the States, and in the Constitution of the United States, are found provisions in relation to eminent domain. These provisions require that private property shall not be taken for public use without just compensation. But such constitutional guarantees, are but the affirmance of the same great doctrine of the common law for the protection of

private property. "It is founded in natural equity and is laid down by jurists as a principle of universal law. Indeed, in a free government almost all other rights would become worthless if the government possessed an uncontrollable power over the private fortunes of every citizen."—*Davidson v. New Orleans*, 96 U. S. 97; *Chicago & S. R. Co. v. Chicago*, 166 U. S. 226, and many authorities there cited.

"In *Searl v. School District*, 133 U. S. 553, 562, and in *Sweet v. Rechel*, 159 U. S. 380, 398, the court said that it was a condition precedent to the exercise of the power of eminent domain, that the statute makes provision for reasonable compensation to the owner."

"In every government there is inherent authority to appropriate the property of the citizen for the necessities of the State, and constitutional provisions do not confer the power, though they surround it with safeguards to prevent abuse. The restraints are, that when private property is taken, a pecuniary compensation, agreed upon or determined by judicial inquiry must be paid."—Cooley's Const. Lim. pp. 356, 357.

"Due process of law requires, first, the legislative act authorizing the appropriation, pointing out how it may be made and how the compensation shall be assessed; and second, that the parties or officers proceeding to make the appropriation shall keep within the authority conferred, and observe every regulation which the act makes for the protection of the interest of the property owner, except as he may see fit to waive therein."—2 Story's Const. § 1956; *Chicago B. & I. R. Co. v. City of Chicago*, 166 U. S. 241; 10 Am. & Eng. Ency. Law, (2d ed.) 1050.

In *Sadler v. Langham*, 34 Ala. 331, it was said: "We do not now decide whether the compensation must be paid before the act of taking or condemning private property is perfected. * * * * Still we would think that legislation unguarded, which, at the instance of a private applicant, divested out of the citizen the title to his lands, or to a permanent easement therein, until compensation had been actually paid to him." Many authorities are cited to sustain the principle.

The case we have, is to be decided not by the Constitution and laws of Tennessee, whatever they may be, but by the laws of Alabama. Cases from the Tennessee court are cited in construction of a similar section in a charter, which sustain the provisions of the charter of this company touching the right of the railroad to the land taken. What the other provisions of the charter besides said section 25 are, we have not been informed. As to the act of the Legislature of Alabama, above referred to, respecting the grant of the right of way of said railroad through Jackson county, and providing "that they shall have and enjoy all the rights, privileges and immunities and be subject to such restrictions as are granted to and imposed upon said company by the act (of the Tennessee Legislature) incorporating the same, as far as said railroad lies in the county of Jackson;" it is to be observed, that the act did not grant the right of way through lands in this State, but remitted the owner of land in this State through which said road might run, to the rights, privileges and remedies of owners of land similarly situated in a foreign State and as provided in a charter granted in that State, not set out in the Alabama statute. In other words, the provisions of a charter in another State not made known, of which the citizens of this State had no notice, and probably not applicable to our institutions are sought, by said Alabama statute, to be transferred and incorporated therein by mere reference. Such statutes do not transfer the law of one State to the other, nor displace the local law, except as otherwise provided.—1 Thompson Law of Corporations, § 321.

The Alabama act in its attempt to re-enact the provisions of the Tennessee charter, sets forth no measure of procedure, and none is shown by the bill, whereby owners of land, through which the road was to pass might obtain just compensation for their property taken.

It in effect authorizes the railroad, without the authority or consent of the owner, to go upon and appropriate his land, and if any complaint or protest is made, to say to him,—"If you do not like the course I am pur-

[Jones *et al.* v. Nashville, Chattanooga & St. Louis Ry.]

suing, make me pay for the land taken, if you can, but if you seek to do so, you must begin within five years after I have finished my road, or you shall not have anything." If the owner does not seek compensation, in five years after the road is finished over his land, the presumtion is authorized to be indulged that he granted the land to the company, and is therefore barred to claim anything. This is a statute of limitations of five years after the action accrued against the prosecution of suits for damages in such cases. It is not to be denied, that the legislature was competent to pass such a law, and reduce the limitation from ten to five years. But it does not appear from the bill, that it was the intention of the Legislature of this State, to adopt the statute of the State of Tennessee as to any particular proceeding for the ascertainment of compensation for the land taken, without which the statute of limitations of five years as there created is not applicable here.

The railroad bed and track had been in the undisturbed possession of the railroad company since the road was built, some 45 or 50 years ago, and outside the space thus occupied, the owners of the land have been in the undisputed and unquestioned possession and occupancy. This litigation does not have reference to the road bed and track, but relates alone to the land on each side thereof, within one hundred feet of the center of the track. The company until now, have never sought to disturb the owners, and have made no claim to the land occupied by them. Now they propose to take it for railroad purposes, without paying anything for it, claiming that respondents have no right to interfere. The chancellor so ruled, overruling the demurrer to the bill, the motion to dismiss for want of equity and to dissolve the injunction.

The decree of the lower court is reversed and a decree will be here rendered dissolving the injunction and dismissing the bill.

Reversed and rendered. .

McCLELLAN, C. J., DOWDELL and DENSON, J. J., concurring.