## . CITY OF INDIANAPOLIS *v.* RAY.

[No. 7,517. Filed March 7, 1912. Rehearing denied December 31,
1912. Transfer denied February 13, 1913.]

1. MUNICIPAL CORPORATIONS.—*Defective Sidewalks.—Injury to*
*Pedestrian.—Complaint.*—In an action against a municipal corpo-
ration for personal injuries caused by a defective sidewalk, a
paragraph of complaint alleging facts showing that the sidewalk
had been unsafe for a number of years, that defendant, by the
exercise of proper care and diligence, could have known of such
unsafe condition and could have made the same safe before the
injury, that, for a period of two years before the injury, em-
ployes of defendant inspected the basement of a building adja-
cent to such sidewalk, and, if such inspections had been made
with proper care, the defect could have been discovered, and
that plaintiff had no knowledge of such defective condition, and
could not have discovered it in the exercise of ordinary care,
shows a violation of a duty owing to plaintiff and is sufficient to
withstand a demurrer. p. 390.

2. MUNICIPAL CORPORATIONS.—*Care of Sidewalks.*—*Notice of Defects.*—*Liability.*—It is the duty of a municipal corporation to keep its sidewalks in a reasonably safe condition for the use of the public, and it is liable for all defects therein of which it had actual knowledge, or which were so obvious, or had existed for such a length of time, that its officers would be apprised of them, if they were diligent in the performance of their duty. p. 391.

3. MUNICIPAL CORPORATIONS.—*Defective Sidewalks.*—*Injury to Pedestrian.*—*Notice of Defect.*—*Evidence.*—In an action for injuries in falling through a defective sidewalk, evidence that the defect could not be discovered from any outward appearance of the walk, that the walk broke and allowed plaintiff to fall at the given point, because the foundation thereunder had been washed out, that the sand and gravel composing the foundation had gradually washed into the basement of an adjacent building, through an opening where a waterpipe penetrated the basement wall, that some years prior to the injury a similar defect in the walk had been caused by the giving way of the basement wall, and that for two years prior to plaintiff's injury a member of the city fire department entered such basement at various times to direct the removal of paper and rubbish, was insufficient to show that the city had either actual or constructive notice of the defect which caused the injury. p. 392.

4. MUNICIPAL CORPORATIONS.—*Defective Sidewalks.*—*Liability.*—In the absence of actual notice, municipal corporations are only liable for such defects in sidewalks as are apparent, or are suggested by appearances, or are disclosed by a test in the nature of the ordinary use of such walks. p. 395.

5. MUNICIPAL CORPORATIONS.—*Defective Sidewalk.*—*Notice of Defect by City Fireman.*—*Liability.*—Knowledge of the defective condition of a sidewalk by a member of the city fire department will not of itself constitute notice to the city of such defect. p. 396.

From Superior Court of Marion County (73,810); *Clarence E. Weir*, Judge.

Action by Sarah Ray against the city of Indianapolis. From a judgment for plaintiff, the defendant appeals. *Reversed.*

*Frederick E. Matson, Crate D. Bowen, James D. Peirce, Joseph B. Kealing, Merle N. A. Walker* and *Newton J. McGuire*, for appellant.

*Gay R. Estabrook*, for appellee.

IBACH, P. J.—This was a suit brought by Sarah Ray, appellee, against the city of Indianapolis, appellant, to recover damages for injuries received by falling through a defective sidewalk, which, it is alleged, appellant had allowed to remain for a number of years on Georgia street, one of the principal streets of said city. The complaint as originally filed was in three paragraphs. A demurrer was sustained as to the first and overruled as to the second and third. The cause was put at issue by answer in general denial. There was a trial by jury and a verdict for plaintiff. The court overruled a motion for a new trial, and rendered judgment on the verdict. The errors assigned and argued are the overruling of the demurrer to the third paragraph of complaint, and the overruling of the motion for new trial.

The third paragraph, instead of charging that the city had actual knowledge of the defect in the walk complained of, as was charged in the second paragraph, avers that the foundation on which such walk had been originally constructed was washed out at that place about one year before plaintiff was injured; that nearby said place and about two years previous to the time of her injury, a part of the walk had given way on account of the support thereof being washed out, and the same was not repaired for some months thereafter; that such defects could readily be seen during all that time; that the sidewalk where plaintiff fell had been unsafe and insecure for a number of years, and dangerous by reason of the foundation or support under the same having been washed out, and that defendant, by the exercise of proper care and diligence, could have known of such unsafe condition, and could have made the same safe long before. It is also charged that for a period of two years before plaintiff's injury, employes of the city inspected the basement of the building adjacent to such sidewalk, and if the inspection had been made with proper care, the hole under the sidewalk at the point where the section of the cement walk broke under plaintiff's weight, causing her to

fall and injuring her, could have been discovered and the defect remedied. It is further charged that a certain drain had been constructed some years before leading from the building on the Georgia street side, and before the same was completed a large amount of the foundation of the sidewalk had been washed out by a heavy rain, and had not been properly replaced, and that by the exercise of proper care and diligence, after the drain was completed, the city could have discovered the unsafe condition of the walk; that plaintiff had no knowledge of its defective condition, and by the exercise of ordinary and reasonable care she could not have discovered it. The defective condition of the sidewalk is made clear and specific, the absence of knowledge on plaintiff's part of any defect in the walk is also made to appear. Facts are also clearly pleaded tending to show constructive knowledge of the defect which caused plaintiff's injury for a sufficient length of time before the accident to have repaired it and to have made it safe, and nothing is specially pleaded tending to show that any act on plaintiff's part in passing over the walk contributed to her injury. On the contrary, all the facts averred tend to show a violation of a duty toward plaintiff imposed by law on defendant, and for the violation of which an injury resulted to plaintiff. We therefore think the third paragraph is sufficient to withstand the demurrer.

Appellant insists that the verdict is not sustained by sufficient evidence. It is first contended that it is not shown that the city had any notice, either actual or constructive, of the defective condition of the sidewalk in question.

It is the duty of a municipality to keep its sidewalks in a reasonably safe condition for the use of the public, and it is liable for all defects therein of which it had 2. actual knowledge or which were so obvious or had existed for such a length of time prior to the accident as to apprise the officers of such municipality, if they were diligent in the performance of their duty. This rule has

been approved by our courts in the following or similar language: " 'Where the duty to keep its streets in safe condition rests upon the corporation, it is liable for injuries caused by its neglect or omission to keep the streets in repair, as well as for those caused by defects occasioned by the wrongful acts of others, but as, in such case, the basis of the action is negligence, notice to the corporation of the defect which caused the injury, or facts from which notice thereof may reasonably be inferred, or proof of circumstances from which it appears that the defect ought to have been known and remedied by it, is essential to liability.' For, in such cases, 'the corporation, in the absence of a controlling enactment, is responsible only for a reasonable diligence to repair the defect or prevent accidents after the unsafe condition of the street is known or ought to have been known to it or to its officers having authority to act respecting it.' " *Turner* v. *City of Indianapolis* (1884), 96 Ind. 51. See, also, *Town of Rosedale* v. *Ferguson* (1892), 3 Ind. App. 596, 30 N. E. 156; 2 Dillon, Mun. Corp. (5th ed.) §§789-790.

It must be conceded that it definitely appears from all the evidence in the case that the defect which caused appellee's injury was a latent one, under the walk, a defect

3. which could not be discovered from any outward appearance of the portion of the walk which gave way. Indeed, there seems to be no contention that the city had actual knowledge of the existence of any washout prior to the accident. Plaintiff testified that the accident happened about 10 o'clock in the forenoon; the day was bright; she did not discover any depression or cracks or that the sidewalk was sunken; if it had been she would have noticed it, for she was "looking where she was going"; "the slab which broke was as smooth as a floor;" no defect in the walk could be seen. These statements are supported by all the witnesses who testified in the case.

It is not contended that the walk was not properly built

when first constructed, and it is definitely shown by all the evidence that the walk broke and allowed plaintiff to fall at the given point, because the foundation thereunder had in some manner been washed out and left this particular part of the walk unsupported, and when appellee and her companion stepped upon it, it broke, and appellee fell with it to the bottom of the hole thus made, a distance of about four feet.

It is also made to appear that the walk was built at least seven years before the date of the injury; that in 1904, owing to a large amount of rain causing high water, the cellars of many buildings were filled with water, and at that time some water flowed under and over the walk in question. The point where plaintiff fell is at the northeast corner of Georgia and Illinois streets, one of the public corners of the city, where the walks are used extensively by the traveling public, and there was nothing about the sidewalk in the locality where the accident occurred to indicate that it was in a dangerous condition until three years thereafter, and then only at the time when plaintiff was injured. Prior to that time there was nothing in the appearance of the particular slab which broke and caused her fall that would indicate danger to any one passing over it.

Considering the evidence alone most favorable to appellee, including all reasonable inferences arising therefrom, can we say then that there is any evidence of notice to the city at any time before the accident of the dangerous condition of the walk?

It is quite clear that the foundation gave way by reason of the removal of the sand and gravel underneath, and on no other account, and it was removed either at the time of the high water of 1904, or it was carried away in the manner described by appellee's witness, Thomas Mobley, who testified that he went into the basement of the Stubbins Hotel on April 19, 1907, the day of the accident, and found, as he had before, sand which had been washed out from under the

sidewalk; that the water-pipe which supplied the elevator with water from the main pipe had been brought through the brick wall; and an opening of about one-half inch had been left around the entire six-inch pipe. Witness had been called to "pack the elevator," and said: "I found the sand had worked out around the pipe that supplies the elevator, and I shoveled it back, you can see it there, as much as two wagon loads. The sand found there came from under the sidewalk. It came through the foundation of the building near the floor of the basement. Whenever there was a little bit of rain it would seep right in there, and the time most of it came in was when we had the flood in 1904." The facts proven show that the foundation of the building formed a retaining wall on the north and east to hold in place the sand and gravel forming the support for the cement walk, and the curb made the retaining wall on the Illinois street and Georgia street sides. This witness was the first to arrive at the point where appellee was hurt, and assisted her out of the hole, and he says that the amount of sand necessary to fill the hole would be two or three wagon loads, and that this excavation was near to the part of the walk where the water-pipe was located, being the same pipe referred to by the witness around which pipe an opening had been left in the basement wall.

Witness, Ohms, also testified to the effect that a washout had occurred five years before plaintiff's injury, and at that time sand and gravel had been removed from under the walk. We have carefully reviewed all the testimony given by this witness, and find it wholly wanting in the elements necessary to sustain the verdict, since it does not show actual notice to the city of such defect, and no conditions of any kind surrounding the place that would indicate that the walk was defective beneath its surface, or anywhere else.

There was some evidence tending to show that some distance from the slab which broke, and immediately adjacent to the building, and at a point where an outside stairway

leads to the basement, the walk had previously given way. This is shown to have been occasioned by reason of the basement wall at this place giving way, for some reason unexplained, thereby allowing some of the foundation under the walk next to the building to be sunken and depressed. It nowhere appears, however, that there was anything in this circumstance that would indicate that there was any defect in the walk at any other point, or that there was anything in its appearance that would require the city to make an inspection, or that the hole under the walk could have been discovered even if an ordinary inspection had at any time been made by the proper city authorities. Such defect could only have been discovered by an extraordinary inspection, which is not required.

In the case of *Hembling* v. *City of Grand Rapids* (1894), 99 Mich. 292, 58 N. W. 310, the supreme court of Michigan said: "Respecting the ordinary sidewalks, there is no such duty of substructure inspection as is imposed in case of bridges or other elevated ways. In the absence of actual notice, municipalities are only liable for such defects in sidewalks as are apparent, or are suggested by appearances, or which are disclosed by a test in the nature of the ordinary use of such walks." This general doctrine is so well supported by the decisions of our own courts that it is unnecessary to cite authority.

It seems to us that the probable and active cause of the accident was the "seeping away of the sand and gravel from under the walk into the cellar around the water-pipe after each rain." The evidence discloses no other way in which such a portion of the foundation could have been removed. No other opening of any kind is shown to have been in either of the retaining walls, but, on the other hand, it is made to appear that the amount of such materials as did work out from under the walk into the adjacent building was the amount necessary to fill the hole under the walk where appellee fell.

Apparently, for the purpose of showing an opportunity to obtain knowledge of the defect if ordinary care had been used to discover it, appellee averred in her complaint "that for a period of more than two years prior to said injury servants and employes of the city inspected the basement of the building adjacent to such sidewalk, and if such inspection had been made with proper care the said hole could have been discovered." The only evidence on this branch of the case is that at various times for years a member of the city fire department went into the basement of such adjacent building, and directed persons in charge there to remove all paper and rubbish and all other combustible material. This evidence is wholly insufficient, conceding that for some purposes it may have been competent, for if any inspection made by such fireman with a view to having rubbish removed from such basement revealed any defect in the walk, and he, by the exercise of ordinary care, observed or might have observed a washout under such walk, such knowledge on the part of the fireman would not of itself constitute notice to the city of such defective condition of the walk and foundation thereof. In cases of this character, the notice, either actual or constructive, must come to some officer or agent of the city other than a fireman. As a matter of law, appellant was not required to make search for such a defect as is conceded by the evidence existed in the foundation of the sidewalk in question. It is conceded that the city had no actual notice of such defective condition, neither was such condition apparent, and from a just examination of the whole record we come to the conclusion that the facts and circumstances are not sufficient to show that the defect complained of was suggested to appellant by the general appearance of the walk, or that it was discoverable by any one using the walk in the usual and ordinary way, or that appellant had any con-

structive notice that the walk was faulty. A new trial
should have been granted.

Judgment reversed, and cause remanded for new trial.

NOTE.—Reported in 97 N. E. 795. See, also, under (1) 28 Cyc.
1465; (2) 28 Cyc. 1388; (3) 28 Cyc. 1498; (4) 28 Cyc. 1384; (5)
28 Cyc. 1397. As to a municipality's liability for injuries due to
street defects, see note to *Mordhurst* v. *Ft. Wayne, etc., Co.* (Ind.),
106 Am. St. 264; 103 Am. St. 258. As to the notice to be given the
municipality of the defect, see 103 Am. St. 258. On the question of
notice of claim and cause of injury as condition of municipal
liability for defect in highway, generally, see 20 L. R. A. (N. S.)
757.