10 So.2d 24
### CITY OF BIRMINGHAM v. LAKE.
#### 6 Div. 21.

Supreme Court of Alabama.
Oct. 8, 1942.

[1] Ante, p. 306.  [2] Post, p. 421.

Chas. W. Greer and John S. Foster, both of Birmingham, for appellant.

George Frey, of Birmingham, for appellee.

BOULDIN, Justice.

The City of Birmingham, for the primary purpose of furnishing cheap water for industrial uses in the Birmingham District, installed an Industrial Waterworks System, at a cost of some $4,500,000, and now sells some 20,000,000 gallons per day to such industries, and 5,000,000 gallons per day to Birmingham Waterworks Company, a public service corporation, to be processed, and used for domestic purposes.

To provide a water supply, the city impounded the waters of Blackburn Fork of Black Warrior River, a non-navigable stream, creating Blackburn Lake some seven miles in length and irregular in width, with a shore-line of some 53 miles. This lake is located in Blount County, some 30 miles out of Birmingham. The water is delivered to the distribution plant just north of the city by natural flow through a pipe-line 60 inches in diameter.

Water is delivered to industries unfiltered and unprocessed other than by chlorine treatment.

Water carrying mud, silt, or extraneous matter is undesirable, inconvenient and expensive to consumers, such as steam plants or manufacturers of clay products; and handicaps the city in extending its Industrial Waterworks System.

With a view to furnishing water free of silt or extraneous matter so far as practical, the city selected the site for the lake surrounded mainly by wooded hills, ac-

quired title to the lands in the bed of the lake and closely bordering thereon.

To so maintain this condition, avoid corrosion, and prevent accumulations of debris in the waters is admittedly desirable. The lands bordering on the lake have been posted. Still, evidences of camping parties, fires, and especially fishing and boating on the lake, are frequent.

The City Commission adopted an ordinance, No. 370-F, which reads:

"An Ordinance to protect the properties of, and to provide for, the adequate operation of, the Municipal water Works plant.

"Be It Ordained, by the commission of the City of Birmingham, as follows:

"Section 1. The term, 'properties,' as used in this ordinance shall include either land or water, or both. It shall be unlawful for any person, without a written permit from the City Engineer, to enter upon or go upon, any properties of the City of Birmingham, which are used or owned by said City at, or in connection with, the operation of the said City's Industrial Water Works project in Blount County, which properties are more particularly described as follows:" Here follows particular description of lands.

"Section 2. Any person violating any of the provisions of this ordinance shall, upon conviction, be punished within the limits of, and as provided by, Section 1936 of the Code of Alabama, of 1923 [Code 1940, Tit. 37, § 386]."

Appellee challenged the validity of this ordinance; especially claims the right to fish in the waters of the lake. Despite notice and warning he entered on the lake passing over border lands owned by the city, or going down the bed of the creek at the head of the lake. He caused no extraneous matter to be in the lake.

The city filed its petition for declaratory judgment as specified in A. B. C. D. E. and F., which appear in the report of the case.

Respondent controverted the legal rights of the city as thus specified, and joined in the prayer for a declaratory judgment specifying his view in paragraphs 1, 2 and 3 of his answer, which also appear in the report of the case.

The declaratory judgment of the trial court also appears in the report of the case.

■ (1) Admittedly the City of Birmingham in owning, maintaining and operating its water supply system is performing a proprietary as distinguished from a strictly governmental function. This involves liabilities which obtain in case of municipal ownership and operation of public utilities. City of Birmingham v. Brock, 242 Ala. 382, 6 So.2d 499.

(2) What of the right of the citizen to fish in Blackburn Lake?

The Act "To define the status of fish life in the public fresh waters of Alabama," &c., Gen.Acts Extra Session 1933, p. 67, Section 1, reads:

"The title ownership to all fish in the public fresh waters of the State of Alabama are vested in the State for the purpose of regulating the use and disposition of the same in accordance with the provisions of the laws of this State and regulations based thereon."

Section 4 reads in part: "All waters of this State are hereby declared to be public waters if such waters of any river, creek, lake, brook, bayou, bay, channel, canal, lagoon or other body, traverses, bounds, flows upon or through, or touches lands title to which is held by more than one person, firm or corporation. Any water impounded by the construction of any lock, dam or other devices used for impounding water, and placed across the channel of any public waters, as defined in this section are hereby declared to be public waters."

Blackburn Creek comes within this definition, and has at normal stage sufficient water to maintain fish, as further provided in the act. The waters are impounded by a dam.

■ This statute was construed in Hood v. Murphy, 231 Ala. 408, 165 So. 219. We there held, on ample authority, that the bed of a non-navigable stream is the property of the riparian owner; that he has the exclusive fishing rights in such stream on his own lands. This is incident to ownership of the land.

Such ownership cannot be divested and granted to the public by legislative fiat. Legislation to such effect is unconstitutional. See, also, Jones et al. v. Nashville, Chattanooga & St. Louis Ry., 141 Ala. 388, 37 So. 677. The act above quoted must be construed as limited to purposes of conservation in keeping with the property rights of the owner of the lands.

■ The City of Birmingham had full power to acquire the ownership of lands outside the city for the development of a water supply for its Industrial Waterworks System. Acts Extra Session 1936–37, p. 236, § 1.

A water supply for all the needs of a city is of the most vital concern. The location and manner of development must needs depend on natural conditions. The power of the City of Birmingham to acquire title to the lands and to impound the waters of Lake Blackburn thereon for such use is hardly debatable.

■ We can perceive no reason to deny the city all the riparian rights held by the private owners from whom it was acquired. The city owns the bed of the lake, has a property right in the waters of the lake, not destructive of the rights of upper and lower proprietors. From what source has the public derived any fishing rights in these waters? The city has not acquired it for or dedicated it to the public as a fishing or recreation ground. The right of the public to use city property is confined to uses for which it is held; does not extend to uses tending to impair the use to which the property is dedicated. We are of opinion respondent, as a citizen, has no fishing rights in this lake; that the city has the same right as a private owner to forbid any person entering on this land or on the waters of this lake, without a permit. Because of the uses of this water supply, there is stronger reason for complete control than in the case of private ownership.

3. Has the City of Birmingham police jurisdiction over this property area, with power to make police regulations enforceable by penal ordinances through proceedings in the Recorder's Court?

"Ordinances of a city or town enforcing police or sanitary regulations and prescribing fines and penalties for violations thereof, shall have force and effect in the limits of the city or town and in the police jurisdiction thereof, *and on any property or rights of way belonging to the city or town*." [Italics supplied.] Code of 1923, § 1954, Code of 1940, Title 37, § 9.

This statute derives from the General Municipal Act of 1907. General Acts of 1907, p. 790. It there appeared as separate, complete section (58) p. 821. It was later codified with Section 57, conferring

a general police jurisdiction over areas within three miles of the city limits.

At the same session the Legislature enacted another statute, approved three days prior to approval of above act, providing: "Cities and towns may construct or purchase and operate water works plants; such plants may be within or without such city or town." Acts of 1907, p. 586.

The positive and exact wording of § 58, brought forward without change as above quoted, evinces a clear purpose to extend the police jurisdiction of the city to its properties outside of and beyond the general police jurisdiction, just such properties as are here involved. It is no less clear in declaring the power to enact and enforce penal ordinances for the proper policing of such properties to the end that the objectives for which the properties are acquired and developed may be accomplished. Protecting a municipal water supply, we think, is one of the evident purposes of this statute.

■ Such police jurisdiction is the natural, probably a necessary incident, to the right to own and operate a municipal waterworks plant outside of and beyond the general police jurisdiction of the city; at any point where nature has provided water resources. County lines, as we have held, are no barrier to the exercise of police powers over areas within the general police jurisdiction of the city. White v. City of Decatur, 225 Ala. 646, 144 So. 873, 86 A.L.R. 914.

The functions of the county, as a political and governmental subdivision, are in no way impaired by police jurisdiction of the city over its own properties. We see nothing unreasonable in bringing offenders before a Recorder's Court sitting some thirty miles away. Courts before whom offenders are brought for violation of state laws often sit at greater distance from the scene of the offense.

City ordinances are enforceable only through municipal courts created by law for the purpose. Code of 1940, Title 37, § 585.

■ We know of no limitation upon the plenary powers of the Legislature to enact the legislation herein discussed. Legislative power to confer upon cities similar police jurisdiction over their properties is recognized generally in this country. 3 McQuillin's Mun. Corp., 2 Ed., § 952; 22 C.J.S., Criminal Law, § 116, p. 191.

We would deem it unfortunate, if cities could not have and exercise such police powers.

■ We conclude ordinance, 370-F is valid, and the Recorder's Court has jurisdiction to enforce it.

The judgment of the court below is reversed and vacated. The cause is remanded with directions to enter a declaratory judgment as prayed in the petition.

Reversed and remanded.

GARDNER, C. J., and FOSTER and LIVINGSTON, JJ., concur.