65 So.2d 825

### DOWNEY et al. v. JACKSON et al.

### 6 Div. 423.

Supreme Court of Alabama.

March 26, 1953.

Rehearing Denied June 18, 1953.

J. M. Breckenridge, Birmingham, for appellants.

J. Paul Meeks and Ingram Beasley, Birmingham, for appellees.

PER CURIAM.

This is an appeal from a final decree in a suit in which an appeal to this Court was taken from a decree sustaining a demurrer to the bill and dismissing it. Jackson v. Downey, 252 Ala. 649, 42 So.2d 246.

The substance of the allegations of the bill is contained in our opinion on that appeal. But for present purposes, we will state some of its features. The bill seeks to enjoin the Park and Recreation Board of the City of Birmingham from the further construction and completion of the electric lighting system at the present location of a baseball diamond in McLendon Park in said city, and from sponsoring the night playing of baseball games on it at said location. Complainants are the owners of and reside in homes situated on the west side of Sixth Street, North. McLendon Park is on the east side of Sixth Street, opposite these homes. Other details are also shown by the evidence which we will relate later.

There was no temporary injunction issued. The construction of the project went forward, was completed and use made of it. It was contended in the trial court that its construction and use have sustained the forecast of complainants that it would produce a nuisance. That court entertained the view that its use as constructed for baseball games at night does in fact constitute a nuisance, and entered a final decree permanently enjoining these respondents from using, causing, allowing or permitting to be used the area in question for the playing of night baseball games thereon, and from further using or permitting to be used for athletic contests the lighting system installed on the eighty foot poles situated thereon. The court did not enjoin the use of the area for baseball games conducted in the daylight. We judge from such holding that the trial court concluded that the night games constituted a nuisance on account of conduct and conditions peculiarly applicable to night games. This decree was rendered February 20, 1952, and

was controlled by conditions shown to have existed in the baseball season of 1951.

There are eight light poles constructed around the diamond in question, practically eighty feet high, each of them having ten or twenty high powered flood lights of about 1,500 watts in each light. Two of the light poles are behind the home plate and are focused toward the infield away from complainants' property. Complainants' homes are across the street behind the home plate. Two of the poles are in the outfield (one on each side of it) with the lights directed on the infield and part of the outfield; four are located in or behind the outfield and illuminate the outfield area. Only two of them face the residences of complainants, and they have only two tiers of lights on them. They are focused down on the field and are four hundred feet away from the nearest residence. The only light which falls on complainants' property is reflected. The engineers for respondents testified that there is less light on complainants' property coming from the diamond than if a white way was installed along the street in front of their homes.

The proof showed that in 1951 there were fourteen ball games played on the diamond at night, extending from August 1st to September 3rd, and no night games were played after 10:30. All were amateur teams in the Birmingham area. They compose the Birmingham Amateur Baseball Federation. The attendance was approximately two hundred persons, and no charge was made. This diamond has been used for daytime playing since about 1928 or 1929. The city acquired an area of about forty-two acres in 1923 for park and recreational purposes. This diamond is located on it and so is Legion Field, the football stadium used as such since Thanksgiving Day 1927. The management will not allow trespassing on complainants' property to retrieve balls which are sometimes knocked on their property, which is not peculiar to night games. The noises made are shown not to be unusual for amateur ball games. There is no rowdy conduct or cursing.

It is shown that the diamond is about fifteen feet below the level of the street grade and sixteen and one-half feet below the property of complainants. There is a six foot wire fence along the Sixth Street side of the diamond. It would be practical to build a screen that would eliminate most of the glare on the residences. It is not practicable to use some other place in the reservation for a diamond. The street there is fifty feet wide: thirty feet of it is a paved roadway. The seating stands are concrete, erected in 1935, with a seating capacity of about three hundred and fifty to four hundred persons. The diamond has been in its present location since 1928. The home plate is about one hundred and thirty to one hundred and thirty-five feet from the nearest residence.

The proof did not show any drinking at the games. There are convenient toilet facilities, though on two occasions persons were seen using the bushes to relieve themselves, and a few people had changed their outer clothes in the bushes. The following recreational activities were carried on in the park: tennis, football, volley ball, horseshoes, softball, archery and other games. The lights were installed in the fall of 1948, and are also used for parking on the diamond for football game attendants at the stadium, and were first used for night baseball in 1951. The area on the side of Sixth Street across from the park is zoned as "B" residential.

The Birmingham Amateur Baseball Federation is a nonprofit organization of leagues of amateur baseball teams. The park board, which operates the park here in question, operates sixty parks in the city, and with other organizations it sponsors baseball for boys.

There was little or no material conflict in the evidence. The facts disclosed by it create a different impression from those alleged in the bill, but they do not conflict. It appears that the baseball diamond here involved resembles in its construction and use many high school recreation grounds. Their use by such players is in the interest of the general public, to build sound bodies for the boys and the right viewpoint which they should develop in respect to the real contests which will come in mature

years. On the occasion of their games the enthusiasm of it will manifest itself in wholesome noisy expressions. That status is an incident to all such recreations, and must be endured—perhaps, encouraged. The games are supervised and apparently well conducted.

Only the night games were sought to be enjoined, but the daylight games had the same disturbances as those at night, except the lights. The games were over by about 10:30 at night.

It must be emphasized that this is no place for commercial baseball or other forms of commercial recreation. The players are amateurs playing strictly for sport, in which sound development of the boys is the chief purpose.

■ The park and recreation board is an agency of the city, created by authority of law. Sections 721 to 729, Title 62, Code. The performance of their duties is discharging a governmental function of the city. Williams v. City of Birmingham, 219 Ala. 19, 121 So. 14; section 729, Title 62, Code. It is therefore done by authority of law. And it is not done for profit. It is not of a proprietary nature, but under the police power to promote the health and well-being of the people. This particular kind of recreation is specifically authorized by section 721, Title 62, Code.

■ We observed on former appeal that while this is a lawful enterprise it should not be conducted so as to constitute an unnecessary or unreasonable nuisance. That means to uphold the well established principle that the construction and operation of a governmental agency by authority of law, constructed and operated exactly as authorized by law and strictly in accordance with good practice, cannot be a nuisance in law, though it may work damage to others. Burnett v. Alabama Power Co., 199 Ala. 337, 361, 74 So. 459. But the injurious consequences may give occasion for a claim for just compensation under the eminent domain feature of the Constitution, section 235. Wheeler v. River Falls Power Co., 215 Ala. 655, 111 So. 907.

This principle was carefully analyzed in Hamilton v. Alabama Power Co., 195 Ala. 438, 442, 70 So. 737, 739. It is there said: "(3) If there has been no negligence as charged, but injury has resulted to them as the mere result of, or incident to, the construction of the dam and the creation of the pool, and the said dam was constructed by authority of law and in compliance therewith, the complainant (Alabama Power Co.) is not liable for consequential damages (section 235, supra), except to those whose property may have depreciated in value as a proximate result of conditions created by the complainant in the construction or enlargement of its works or improvements." Richards v. Washington Terminal Co., 233 U.S. 546, 34 S.Ct. 654, 657, 58 L.Ed. 1088; McClung v. Louisville & Nashville R. R. Co., 255 Ala. 302, 51 So.2d 371.

The instant suit does not involve a claim for damages to adjoining property under section 235, Constitution.

In City of Bessemer v. Abbott, 212 Ala. 472, 103 So. 446, there was legislation authorizing an incinerator to be constructed and operated by the city. It was held that the city was not liable for creating a nuisance, unless it exceeded its authority or acted negligently. If there is no such excess, it is not abatable. Roach v. City of Tuscumbia, 255 Ala. 478, 52 So.2d 141. "There can be no abatable nuisance for doing in a proper manner what is authorized by law." Fricke v. City of Guntersville, 251 Ala. 63, 36 So.2d 321, 322; Branyon v. Kirk, 238 Ala. 321, 326, (21), 191 So. 345.

■ Usually a city is not liable for negligence in performing its governmental functions. Williams v. City of Birmingham, supra; McSheridan v. City of Talladega, 243 Ala. 162, 8 So.2d 831. But a different rule obtains in respect to the creation of a nuisance. The city is liable for negligence causing a nuisance whether or not in so doing it is performing a governmental function. But the mere act of creation is not a nuisance per se when done by due authority. Densmore v. City of Birmingham, 223 Ala. 210, 135 So. 320. We

have said that under section 502, Title 37, Code, in respect to a nuisance, negligence is necessary to charge the city with liability for creating it when a legislative enactment authorizes it. City of Bessemer v. Chambers, 242 Ala. 666, 8 So.2d 163.

It follows, we think, that if in the performance of a legally authorized enterprise the city neglects to do that which it should have done in an exercise of due care, thereby creating a nuisance to the damage or unnecessary annoyance of residents, the appropriate judicial course in equity is to enjoin doing the negligent act which is the guilty agent or modify its use so as to relieve it of the injurious consequences, or minimize them to where no just complaint could be made. We think that theory should be the guiding principle here applicable. The engineers of respondents testified that it was practical to screen off the glare from the lights so as to minimize that which is the just cause of complaint. That would not stop the night games, but would relieve complainants of their just objections to them. The other objections are incident to all ball games and do not result from a failure to use due care.

We think, therefore, that the injunction should be modified so as not to stop night games but to enjoin these respondents from permitting the glare of lights used for night games to be cast upon complainants' property to the extent that this can be reasonably done by the erection of a screen suitable to that end. Martin Building Co. v. Imperial Laundry Co., 220 Ala. 90, 124 So. 82.

The foregoing opinion was prepared by Foster, Supernumerary Judge of this Court while serving on it at the request of the Chief Justice, under authority of Title 13, section 32, Code, and it was adopted by the Court as its opinion.

It results from the foregoing that the decree as thus modified is affirmed.

Modified and affirmed.

LIVINGSTON, C. J., and LAWSON, STAKELY and MERRILL, JJ., concur.