109 So.2d 692

**CITY OF DECATUR**

**v.**

**Estelle PARHAM.**

**8 Div. 910.**

Supreme Court of Alabama.

Feb. 19, 1959.

Julian Harris, Norman W. Harris, Philip Shanks, Jr., and John A. Caddell, Decatur, for appellant.

Powell & Powell, Decatur, for appellee.

588

LAWSON, Justice.

This is a suit by Estelle Parham against the City of Decatur to recover damages for personal injuries which are alleged to have resulted from an electric shock that she received on the afternoon of July 24, 1956, when her right arm came in contact with an electric hair dryer affixed to a wall in a dressing room in a bathhouse owned and maintained by the City of Decatur in connection with its operation of a municipally owned swimming pool.

The plaintiff's amended complaint, on which the cause went to the jury, consisted of six counts, numbered 1, 2, 4, 5, 6 and 7. The defendant pleaded the general issue in short by consent in the usual form. The jury found for the plaintiff on Counts 1, 2, 4 and 7. The amount of the verdict was $10,000 and judgment for that amount was rendered for the plaintiff and against the City. Its motion for a new trial having been overruled, the City appealed to this court.

The swimming pool and bathhouse were under the control and direction of the Park and Recreation Board of the City of Decatur, to which agency the City had entrusted the general supervision, operation and control of the parks, places of recreation and playgrounds owned by the City. Ordinance No. 561, adopted April 3, 1950.

The City of Decatur also owned and operated an electric distribution system which was under the control and management of another agency of the City, the "Municipal Utilities Board of Decatur, Morgan County, Alabama," created by Local Act approved March 3, 1939. Act No. 89, Local Acts 1939, p. 47.

The Municipal Utilities Board furnished and sold electricity to the Park and Recreation Board for use in connection with the operation of the swimming pool and bathhouse. The electricity was delivered by the facilities and system under the control and management of the Municipal Utilities Board to a metering point outside the pump house of the swimming pool. From that metering point electricity was conducted to the hair dryer in the bathhouse by a wiring system which was a part of the bathhouse property and which was under the control of the Park and Recreation Board.

As shown above, the jury in its verdict specified that it found for the plaintiff on Counts 1, 2, 4 and 7. No reference was made to Counts 5 and 6, which also went to the jury. The effect of this verdict was a finding for the defendant as to Counts 5 and 6, so no further reference need be made to those counts. Central of Georgia Ry. Co. v. Corbitt, 218 Ala. 410, 118 So. 755. See Gibson v. Elba Exchange Bank, 266 Ala. 426, 96 So.2d 756.

In none of the counts of the complaint did plaintiff base her right to recover on the theory of negligence of the servants, agents or employees of the City in the construction or maintenance of the bathhouse or of any appliance therein. No recovery could have been had under such a count, for it is well established that a municipal corporation is ordinarily not

liable for injuries which result from the negligent performance of a governmental function of a municipality. Parr v. City of Birmingham, 264 Ala. 224, 85 So.2d 888; City of Bay Minette v. Quinley, 263 Ala. 188, 82 So.2d 192; Williams v. City of Birmingham, 219 Ala. 19, 121 So. 14. And it is well established that the operation of a swimming pool and bathhouse and similar recreational facilities are governmental functions. Mathis v. City of Dothan, 266 Ala. 531, 97 So.2d 908, and cases cited. The holding in the case last cited is in accord with the prevailing view. See Annotation, "Municipal operation of bathing beach or swimming pool as governmental or proprietary function, for purposes of tort liability," which begins on page 1434 of 55 A.L.R.2d.

In Counts 1, 2, and 7 plaintiff bases her right to recover on allegations to the effect that either the bathhouse or the defective hair dryer installed therein was a nuisance and that the plaintiff was injured as a proximate consequence of the negligent maintenance or negligent operation of such nuisance.

■ Those counts were drafted, no doubt, in the light of the holding of several of our cases to the effect that a City is liable for negligently causing or creating a nuisance, whether or not in so doing it is performing a governmental function. Downey v. Jackson, 259 Ala. 189, 65 So.2d 825; City of Bessemer v. Chambers, 242 Ala. 666, 8 So.2d 163; Densmore v. City of Birmingham, 223 Ala. 210, 135 So. 320; City of Bessemer v. Abbott, 212 Ala. 472, 103 So. 446. In Town of Vernon v. Wedgeworth, 148 Ala. 490, 42 So. 749, 750, the plaintiff sued the town for the maintenance of a nuisance—a privy kept open for public use—near his dwelling house. In the opinion in that case it was stated that "no authority can be produced holding that negligence is essential to establish a cause of action for injuries of the character complained of here." But our later cases are to the effect that negligence is necessary to charge the City with liability where the act

complained of is carried on under legislative authority. Downey v. Jackson, supra; City of Bessemer v. Chambers, supra; City of Bessemer v. Abbott, supra. See Wheeler v. River Falls Power Co., 215 Ala. 655, 111 So. 907; § 502, Title 37, Code 1940.

■ In no case which has come to our attention have we held a City liable for personal injuries resulting from a nuisance negligently created or maintained in the course of the performance of a governmental function except where such injuries were caused by vile and offensive odors which emanated from an incinerator, garbage dump, trash pile or similar operation maintained by the City in close proximity to the plaintiff's place of abode. City of Birmingham v. Prickett, 207 Ala. 79, 92 So. 7; City of Bessemer v. Pope, 212 Ala. 16, 101 So. 648. See City of Birmingham v. Ingram, 20 Ala.App. 444, 103 So. 595.

The case of Downey v. Jackson, supra, was on the equity side of the court and involved an injunction against an agency of the City of Birmingham. In City of Bessemer v. Chambers, supra, the plaintiff claimed damages resulting from the operation by the City of Bessemer of a garbage dump which the evidence tended to show "burned throughout the day and night resulting in offensive odors and smoke blowing in and about the homes of the plaintiffs with much offense and annoyance to them. * * *" The damages there sought were for an invasion of private property rights. The same is true in the case of City of Bessemer v. Abbott, supra, from which we quote:

"As we construe the complaint, it charges that the defendant municipality has maintained an actionable nuisance in that it has operated near plaintiff's premises an incinerator for the disposal of dead animals, garbage, and other waste materials of a noxious character, the particular forms of offense being (1) that those noxious materials have been hauled to the incinerator in open wagons so as to diffuse offensive odors;

and (2) that in the operation of the plant, i. e., in the burning of this waste material, plaintiff's premises—dwelling and storehouse—were invaded by filthy and offensive smoke, vapors and odors generated thereby."—212 Ala. 472, 103 So. 446.

In Densmore v. City of Birmingham, supra, the plaintiff sued the City to recover damages for personal injuries resulting from a collision between the automobile in which plaintiff was riding and a street sweeper. There is language in the opinion relative to our holding in City of Bessemer v. Abbott, supra [223 Ala. 210, 135 So. 321], but the opinion shows that "no count of the complaint is expressly predicated upon the creation of a nuisance." The conclusion reached was that the court properly sustained demurrers to all of the counts of the complaint. That case is not considered by us as extending to injuries of the kind there under consideration the rule of the Abbott case, supra.

We are not willing to entend the rule of the cases cited and from which we have quoted above to a factual situation such as is presented in this case. Before coming to that conclusion we have read cases from many other jurisdictions and in many of them is language to the effect that municipality may be found liable for injuries to the person resulting from a nuisance created or maintained by the municipality in the exercise of governmental functions, although such injuries were not caused by noxious odors, smoke or fumes blowing in and about the homes of the plaintiffs from incinerators, garbage dumps, and the like.

But these cases are so beset with qualifications, limitations and restrictions as to add only one more confusion to the classic confusion relating to distinctions between governmental and proprietary functions. The practical effect of the rule, even in jurisdictions broadly recognizing its application to cases of all types of personal injuries, is often severely limited by the circumstances and strict definition of "nuisance" within the meaning of the rule. The reasoning of courts in refusing to apply the rule to tenuous cases of nuisance is often very similar to the reasoning of those courts which entirely withhold recognition of the rule on the ground that the accepted doctrine of immunity from torts in the exercise of governmental functions may not be evaded merely by calling negligence by another name. See 56 A.L.R.2d 1416, 1418.

The difficulty in determining whether the negligence of the City's servants becomes so outrageous as to amount to a nuisance has led the courts to some surprising conclusions. In Hoffman v. City of Bristol, 113 Conn. 386, 155 A. 499, 75 A.L.R. 1191, it was held that the erection of a diving board over shallow water in a public pool is a nuisance. Conversely, in the case of Selden v. City of Cuyahoga Falls, 132 Ohio St. 223, 6 N.E.2d 976, it was held that a diving board was not a nuisance although perhaps negligence. In the case of Melker v. City of New York, 190 N.Y. 481, 83 N.E. 565, 16 L.R.A.,N.S., 621, a fireworks display was held not to constitute a nuisance; but when the proper precautions were not taken to avoid injury to citizens, the same court held that a fireworks display was a nuisance. Speir v. City of Brooklyn, 139 N.Y. 6, 34 N.E. 727, 21 L.R.A. 641.

■ We have consistently adhered to the principle that legislative action is required to make a municipal corporation responsible for personal injuries or death caused by the negligence of its servants, agents or employees while engaged in governmental functions and we think it unsound to extend the nuisance exception to cover such injuries, thereby requiring the City to defend every personal injury negligence action and the law of nuisance would be further confused by attempts to force a coverage of the individual case.

Although, as we have observed, some courts engage in chipping away bit by bit at the doctrine of governmental immunity from one point of view or another where distinctions, defensible or indefensible, are seen, the general doctrine is so firmly embedded in our jurisprudence that we en-

tertain the view that correction, if needed, must come from the legislature. Only the legislature can provide the regulations and limitations necessary to protect the public interest and provide the fiscal basis for payment of such claims.

■ In view of the foregoing, we hold that the defendant City was entitled to the general affirmative charge as to Counts 1, 2 and 7, which charges were duly requested in writing.

Count 4, the remaining count on which the jury based its verdict, reads in pertinent part as follows:

"Plaintiff claims of defendant Twenty-Five Thousand ($25,000.00) Dollars, damages, for that heretofore, on, to-wit, July 24, 1956, for reward and profit, defendant owned, operated and maintained an electric light plant and system in Decatur, Alabama, and negligently furnished and supplied electricity to a public bathhouse near the intersection of Somerville Road and Prospect Avenue whereby an electrically driven and operated device, to-wit, a hair dryer, therein located, became highly electrified and charged with high voltage electricity rendering the same dangerous to human life, health and safety, and plaintiff while using said public bathhouse in a reasonable manner, where she had a lawful right to be, and without fault of plaintiff, gently touched said device, to-wit, a hair dryer, and was proximately injured thereby, and plaintiff sustained violent personal injuries and damages as a proximate consequence of said negligence of the defendant, in this: * * *"

As we come to consider the sufficiency of the evidence to support this count, we think it well to emphasize that the gravamen of the count is the negligence of the City in furnishing and supplying electricity to the bathhouse, not in the negligent construction or maintenance of the hair dryer as a part of the facilities of the bathhouse.

■ The rule is settled that when a municipality engages in the business of furnishing electricity, lights, water, etc., to the public, it is not then discharging or exercising governmental functions or powers, but is exercising proprietary or business powers and as to such business it is governed by the same rules of law which are applicable to ordinary business corporations and is therefore liable for the negligence of its servants, agents or employees while acting within the line and scope of their authority. Darby v. City of Union Springs, 173 Ala. 709, 55 So. 889; Town of Athens v. Miller, 190 Ala. 82, 66 So. 702. See Brown v. Tuskegee Light & Power Co., 232 Ala. 361, 168 So. 159; Montgomery v. City of Athens, 229 Ala. 149, 155 So. 551; City of Birmingham v. Lake, 243 Ala. 367, 10 So.2d 24; City of Bessemer v. Whaley, 8 Ala.App. 523, 62 So. 473.

What are the duties owed by a private power company to its customers relative to furnishing of electricity for the operation of electric appliances?

■ It is the general rule, deduced from the authorities, that where electrical appliances on private property are owned or controlled by the owner or occupant of the premises, a company which merely furnishes electricity for such appliances is not responsible for their condition and is not liable for injuries, caused by a defective condition, to the owner or occupant or to third persons on the premises. No duty of inspection rests on the one supplying the electricity from the mere fact of rendering such service to the customer owning or controlling the equipment. Where the one supplying the electricity has no control over the appliances and has no actual knowledge of the defective and dangerous condition thereof, his responsibility ends when connection is properly made under proper conditions and the current of electricity is delivered in a manner which will protect both life and property. Alabama Power Co. v. Jones, 212 Ala. 206, 101 So. 898; Alabama Power Co. v. Emens, 228 Ala. 466, 153 So. 729; Johnson v. Alabama Power Co., 230

Ala. 91, 159 So. 695; Milligan v. Georgia Power Co., 68 Ga.App. 269, 22 S.E.2d 662; Lawson v. City of Chattanooga, 37 Tenn. App. 309, 263 S.W.2d 538; Carroway v. Carolina Power & Light .Co., 226 S.C. 237, 84 S.E.2d 728; Baker's Adm'x v. Kentucky & West Virginia Power Co., 290 Ky. 38, 160 S.W.2d 360; Oesterreich v. Claas, 237 Wis. 343, 295 N.W. 766, 134 A.L.R. 499; 18 Am.Jur., Electricity, § 102; 29 C.J.S. Electricity § 57. In Baker's Adm'x v. Kentucky & West Virginia Power Co., supra, it was held that where a private power company by service wire furnished electricity from its transmission line to electric wires at privately owned bathhouse and swimming beach which had been installed by owner, such wires were in the exclusive control of owner of premises and power company had no duty to inspect them nor liability for their negligent maintenance, thereby precluding recovery against power company for death of bather electrocuted when charged wire came in contact with cable used by patrons of bathhouse and beach.

■ But where the company which furnishes the electricity owns or controls the defective appliance or has knowledge of a defect in the appliance, it has the duty to stop and not to transmit its deadly current to the defective appliance. If it does so after knowledge of said defect, it is liable for injuries to persons caused by this breach of duty. Alabama Power Co. v. Jones, supra; Alabama Power Co. v. Emens, supra; Johnson v. Alabama Power Co., supra.

In considering the question of liability of the City under Count 4, we think it legally correct to view the situation in the manner it would be judged if it had been a private power company, rather than the City of Decatur, which was engaged in the supplying of electricity to the bathhouse and if the suit had been against such private power company alleging negligence in such distribution. We think the fact that the City is immune from liability for its negligence in the operation of the bathhouse, but is liable for any negligence which may have resulted in the distribution of electricity, dictates that Count 4 be considered in that light.

■ The hair dryer was installed by an independent contractor and the evidence tends to show that there was negligence in its installation in that it was not grounded. There is no evidence tending to show that any employee or official of the City had actual knowledge of the fact that the hair dryer had not been properly installed. Although there was evidence tending to show that employees of the Park and Recreation Board were aware of the fact that the hair dryer did not operate properly in that it did not shut itself off automatically, as it was designed to do, there is no evidence tending to show that any of those employees had knowledge of the fact that the hair dryer would produce an electric shock when touched or was otherwise dangerous.

The evidence is without dispute, as we understand it, that no person connected with the Municipal Utilities Board was aware that the hair dryer did not work properly and, in fact, there is no evidence going to show that any employee of that Board knew of the existence of the hair dryer.

The knowledge of the employees of the Park and Recreation Board of the defective condition of the hair dryer did not operate to make the City liable on the theory that it breached a duty to desist from furnishing electricity to that appliance. Sullivan v. Alabama Power Co., 246 Ala. 262, 20 So.2d 224; MacDermid v. City of Seattle, 93 Wash. 167, 160 P. 290; Cook v. City of Anamosa, 66 Iowa 427, 23 N.W. 907; City of Indianapolis v. Ray, 52 Ind.App. 388, 97 N.E. 795; Collins v. Lyons, 9 La.App. 736, 120 So. 418. See City of Birmingham v. McKinnon, 200 Ala. 111, 75 So. 487.

The learned trial judge entertained the same view, as is demonstrated by the giving of written charges 15 and 16 at the request of the City, which charges read:

"15. In determining whether or not the City of Decatur negligently supplied or furnished electricity as alleged in the complaint, it would be improper for you to attribute to the agents, servants or employees of the defendant engaged in and about the business of furnishing and supplying electricity the knowledge which employees of the defendant engaged in operating the bathhouse had acquired, unless such knowledge was actually disclosed to the agents, servants or employees of the City engaged in and about the business of supplying and furnishing electricity.

"16. You cannot find a verdict for the plaintiff under either count of the complaint which is based on the negligence of the defendant in furnishing or supplying electricity, unless you are reasonably satisfied from the evidence that some agent, officer or employee of the defendant engaged in and about the business of supplying and furnishing electricity was negligent, and in determining whether or not any such agent, officer or employee of the defendant was negligent, you should not impute to such agent, officer or employee engaged in and about the business of supplying and furnishing the electricity, the knowledge acquired by some other agent of the defendant who was engaged in and about the work of operating the bathhouse or swimming pool, unless such knowledge was actually transmitted or related to some agent, officer or employee engaged in the work of supplying and furnishing electricity."

We are of the opinion that where liability of a City is sought to be predicated on its negligence in the furnishing or supplying of electricity to a defective appliance, whether on property of the City or of the private individual, the notice of defect must come to some officer or agent of the department or agency of the City directly connected with the distribution of electricity, or to some officer or agent having a duty or responsibility to report to or supervise the officers and agents of that department or agency.

We are unable to see where the doctrine of *res ipsa loquitur* can be said to aid plaintiff in so far as Count 4 is concerned. But in any event, if it be said that that doctrine does apply in a case of this kind, it would have only placed upon the City the duty of going forward with the evidence to the extent of showing no negligence in so far as the furnishing of electricity. We think the City met this burden. There is absolutely no evidence to show that there was any defect in any appliance which acted to conduct the electricity to the metering point or that the amount of electricity which reached the metering point and thereafter was conducted to the electric appliance here under consideration was in excess of the amount for which the wiring and equipment was designed.

This case has presented somewhat novel questions and its solution has not been without difficulty. It has received our careful and studied consideration and we are of the opinion that the defendant was entitled to the affirmative charge as to each count of the complaint upon which the jury rested its verdict. In view of this conclusion it is unnecessary for us to consider the other assignments of error.

The judgment of the trial court is reversed and the cause is remanded.

Reversed and remanded.

SIMPSON, STAKELY, MERRILL and COLEMAN, JJ., concur.